[No. C010117. Third Dist. Feb. 24, 1992.]

ICN PARMACEUTICALS, INC., Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Proskauer, Rose, Goetz & Mendelsohn, Carole E. Handler and Henry Ben-Zvi for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Charlton Holland III, Assistant Attorney General, Dennis Eckhart and Eileen Gray, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**RAYE, J.**—The issue we resolve is a narrow one: Is the Department of Health Services (DHS) statutorily precluded from issuing hazard alerts

notifying employers and employees of the potential risks of exposure to toxic materials? We find no statutory bar to preclude DHS from acting as a repository of information by interagency agreement with the Department of Industrial Relations (DIR) and, in that capacity, from issuing and disseminating alerts according to the terms of the agreement.

ICN Pharmaceuticals, Inc. (ICN) is the manufacturer of ribavirin, a medication used to treat critically ill infants and young children. DHS, and DIR, pursuant to an interagency agreement, established the Hazard Evaluation System and Information Service (HESIS). Hazard alerts are issued by the HESIS unit. In December 1990 DHS authorized issuance of a HESIS hazard alert warning pregnant health care workers to avoid exposure to ribavirin aerosol. DIR's involvement with the ribavirin hazard alert does not appear on the record. On December 6, 1990, ICN sought ex parte writ and injunctive relief to prevent the DHS from issuing the proposed hazard alert. Following the denial of its application, ICN appeals.

I

## Mootness

The Attorney General contends the case is moot and urges us to dismiss the appeal. Apparently the hazard alert was disseminated throughout the state following ICN's unsuccessful attempt to restrain DHS. As a result, the Attorney General argues any damage suffered by ICN cannot be remedied by resolution of this appeal and consequently our disposition would not affect the rights of the parties before us. ICN alleges the case is not moot because DHS will disseminate another HESIS alert before or during the next dangerous winter season.

This appeal raises two distinct issues. The first is whether the trial court abused its discretion by denying ICN's ex parte application for a temporary restraining order. In its moving papers, ICN alleged ribavirin was the only medication approved by the United States Food and Drug Administration (FDA) for the treatment of hospitalized infants and young children with respiratory syncytial virus (RSV), a sometimes fatal respiratory illness. Since ribavirin is administered in aerosol form through an oxygen tent, hood, or face mask, small quantities of the substance may escape into the environment. ICN asserted the release of the alert might dissuade health care workers from administering ribavirin and thereby endanger the health and welfare of critically ill infants and young children "during the very season when the deadly RSV virus is most prevalent."

ICN forecasts grim, perhaps deadly, consequences following release of a hazard alert. The accuracy of those predictions can now be determined since

the alert was issued and disseminated. On the record before us, however, we do not know whether the alert significantly decreased the available pool of respiratory therapists and nurses willing to treat infants and children with ribavirin. We would be ill advised to speculate on whether or not DHS planned a second alert and what, if any, were the consequences of the first hazard alert. Whether or not the trial court abused its discretion by refusing to restrain the issuance of the alert has been rendered moot by the dissemination of the alert throughout the state.

The second issue, however, is different. ICN contends DIR has exclusive statutory authority to issue hazard alerts to employers and employees concerning potential health risks in the working environment and the DHS violated a carefully designed legislative scheme limiting the authority to DIR. This issue presents a matter of continuing public interest which is likely to recur. For this reason, we will review the statutory scheme setting forth the authority of the DIR and DHS to alert California workers to potential risks from toxic materials and hazardous substances. (*Fallbrook Sanitary Dist.* v. *San Diego Local Agency Formation Com.* (1989) 208 Cal.App.3d 753, 757 [256 Cal.Rptr. 590]; *Mann* v. *Superior Court* (1986) 181 Cal.App.3d 372, 374 [226 Cal.Rptr. 263]; *Downtown Palo Alto Com. for Fair Assessment* v. *City Council* (1986) 180 Cal.App.3d 384, 391 [225 Cal.Rptr. 559].)

There remains a subsidiary issue regarding mootness. ICN argues the interagency agreement between DIR and DHS, even if statutorily allowed, did not authorize DHS to issue and disseminate hazard alerts. ICN also points out the agreement had expired prior to issuance of the ribavirin alert. These arguments are clearly moot. The interagency agreement presented in this record has apparently expired.[1] It is only the fundamental interpretation of the statutory scheme which presents a recurring issue of public importance. If and when another HESIS hazard alert is disseminated pursuant to this or another interagency agreement, ICN can challenge DHS's compliance with the agreement. We will not render an advisory opinion on the scope of DHS's authority under a hypothetical interagency agreement or speculate whether this agreement has been renewed.

## II

### STATUTORY AUTHORITY

ICN insists the Legislature established a clear line of demarcation between DIR and DHS. According to ICN, the Legislature charged DIR

---

[1] Although counsel at oral argument were unsure whether the agreement had expired, the agreement was effective by its terms from July 1, 1989, through June 30, 1990. There is no indication in the record that the agreement was renewed.

with sole responsibility to create a repository of current data on toxic materials (Lab. Code, § 147.2), to determine when a hazard alert is justified, and to disseminate the alerts. (Lab. Code, §§ 6351, 6361, subd. (b), 6362.) DHS, on the other hand, was directed by the Legislature to collect and analyze data and thereby to reinforce and strengthen the research and development capability of DIR. (Health & Saf. Code, §§ 429.11, 429.12.) ICN maintains that DHS is statutorily subservient to DIR and without authority to issue or disseminate alerts. We disagree.

Both DIR and DHS have statutory mandates to safeguard the health and safety of California workers. Both are charged with establishing programs on occupational health and disease prevention, predicated on research and education. Health and Safety Code section 429.11 directs DHS to "establish and thereafter maintain a program on occupational health and occupational disease prevention." Similarly, a division of DIR "shall maintain an education and research program for the purpose of providing in-service training of division personnel, safety education for employees and employers, research and consulting safety services." (Lab. Code, § 6350.)

Although both departments act to protect the health of the state work force, the Legislature sought to coordinate their services. DHS is directed to provide "technical assistance in matters of occupational disease prevention and control to the Department of Industrial Relations and other governmental and nongovernmental agencies, organizations, and private individuals." (Health & Saf. Code, § 429.11, subd. (a) (4).) Moreover, DHS must "implement . . . a continuing research and development capability and a repository of hazardous substances capability which will reinforce and strengthen the administration of the California Occupational Safety and Health Act of 1973, Part 1 (commencing with Section 6300) of Division 5 of the Labor Code . . . ." (Health & Saf. Code, § 429.11, subd. (b) [CalOSHA].) DHS is to avoid duplication of activities of DIR and other state departments and agencies. (Health & Saf. Code, § 429.12.)

This statutory scheme of coordination of services does not subjugate DHS to the impotent role suggested by ICN. To the extent CalOSHA and article 13 of the Health and Safety Code blur the functions of DIR and DHS, the Legislature clarified the manner in which the departments were to accumulate and disseminate information on toxic materials and harmful physical agents. Labor Code section 147.2 is dispositive: "In accordance with the provisions of Chapter 2 (commencing with Section 6350) of Part 1 of Division 5 of this code and Section 429.11 of the Health and Safety Code, the Department of Industrial Relations shall, by interagency agreement with

the State Department of Health Services, establish a repository of current data on toxic materials and harmful physical agents in use or potentially in use in places of employment in the state. [¶] The repository shall fulfill all of the following functions: [¶] (1) Provide reliable information of practical use to employers, employees, representatives of employees, and other governmental agencies on the possible hazards to employees of exposure to toxic materials or harmful physical agents." In summary, the Legislature authorized the repository to disseminate information regarding the potential risks of exposure to toxic materials or harmful physical agents. If DHS assumes the role of repository by interagency agreement with DIR, it then has statutory authority, pursuant to Labor Code section 147.2, to issue and disseminate hazard alerts.

ICN contends the following language set forth in section 147.2 confers exclusive authority to DIR: "The Director of Industrial Relations shall appoint an Advisory Committee to the repository. . . . The Advisory Committee shall meet on a regular basis at the request of the director. The Committee shall be consulted by, and shall advise the director at each phase of the structuring and functioning of the repository and alert system with regard to, the procedures, methodology, validity, and practical utility of collecting, evaluating, and disseminating information concerning hazardous substances, consistent with the primary goals and objectives of the repository." This language does suggest DIR is to assume a lead role in the coordinated effort to collect and disseminate information regarding toxic and harmful materials. It does not, however, prevent an interagency agreement between DIR and DHS from designating DHS as the repository. To say that the director of DIR should appoint an advisory committee to keep DIR informed about the "structuring and functioning of the repository and alert system" is not to say DHS cannot assume the role of the repository.

ICN relies heavily on various provisions of the Hazardous Substance Information and Training Act (Lab. Code, § 6360 et seq.) enacted in 1980. It points to the legislative intent "to ensure the transmission of necessary information to employees regarding the properties and potential hazards of hazardous substances in the workplace" (Lab. Code, § 6361, subd. (b)) and the applicability of the act to all employers, sellers, and manufacturers (Lab. Code, § 6362). Neither of these sections state or imply DIR is responsible for implementing the legislative objectives. They merely express the broad scope of the undertaking and the legislative commitment to inform California workers of potential risks of hazardous substances.

Interestingly, the act requires the director to include in the list of hazardous substances those "for which an information alert has been issued by the

repository of current data established pursuant to § 147.2." (Lab. Code, § 6382, subd. (b)(5).) The repository, by interagency agreement, may be DHS, and in that capacity Labor Code section 6382 anticipates issuance of alerts by DHS.

We have determined that the Legislature did not limit the authority to issue information and/or hazard alerts exclusively to DIR, but established a complementary system whereby DIR and DHS share responsibility for improving the health and safety of the California workplace. Specifically, DIR and DHS are authorized to establish a repository of information by interagency agreement on the potential risks of exposure to toxic materials and harmful substances. There is nothing in the legislation to preclude DHS from acting as the repository and, in that capacity, from issuing and disseminating alerts according to the terms of the agreement.

The judgment is affirmed.

Marler, Acting P. J., and Nicholson, J., concurred.