[No. F023910. Fifth Dist. Sept. 9, 1998.]

COUNTY OF FRESNO, Plaintiff and Appellant, v.
BERNADYNNE B. SHELTON et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

**COUNSEL**

Phillip S. Cronin, County Counsel, and Philip J. Norgaard, Deputy County Counsel, for Plaintiff and Appellant.

Kimball, MacMichael & Upton, Jon Wallace Upton, Lozano, Smith, Smith, Woliver & Behrens and Jerome M. Behrens for Defendants and Respondents.

OPINION

ARDAIZ, P. J.—

BACKGROUND

It appears as though Ms. Donleavey brought a separate but related inverse condemnation action against the County of Fresno (County) seeking just compensation for the taking of her roadway easement that resulted from the County's construction and operation of its wastewater treatment facility on property adjacent to her own.[1]

In settlement of this inverse condemnation action, the County agreed, in part, to purchase a certain interest in the real property owned by Ms. Donleavey.[2] The April 1991 settlement was initially drafted in such a way so as to make Ms. Donleavey's obligations contingent on the County's being able to convey to her an appurtenant 60-foot nonexclusive private road easement for access and utility service to the portion of the Donleavey property not being sold and which would become landlocked once the County obtained title to the property interest it had agreed to purchase from her. In August of 1993, that settlement agreement was modified so that Ms. Donleavey agreed to extend the period of time for the County to convey title to the easement for additional one-year periods if, despite its diligent efforts at prosecuting the necessary condemnation action, the County was not able to convey said title within eighteen months of the modified agreement. She also retained discretion to declare the entire agreement void and proceed with an inverse condemnation lawsuit should the County fail to prosecute the needed condemnation action diligently or was unable to condemn the needed easement.

In March of 1995, in an attempt to meet its obligation under this agreement, the County initiated the present condemnation action under Code of Civil Procedure section 1240.350 against various persons, including the

---

[1]This information was gleaned from an *uncertified* photocopy of the first amended complaint filed in the inverse condemnation action which was attached as an exhibit to the pleadings filed in support of respondent Kriegbaums' demurrer. The Kriegbaums asked the trial court to take judicial notice of this document pursuant to Evidence Code section 452, subdivisions (c) and (h).

[2]The settlement information came from uncertified copies of certain documents attached as exhibit B to the pleadings filed in support of respondent Kriegbaums' demurrer. The Kriegbaums asked the trial court to take judicial notice of this document pursuant to Evidence Code section 452, subdivisions (c) and (h). The trial court granted this request.

Kriegbaums and Ms. Shelton, and other legal entities who held some cognizable interest in the real property where the easement was needed.[3] Through this action (Fresno County Superior Court case No. 528982-2), the County sought to condemn a 60-foot nonexclusive easement on Solitude Lane that crossed property owned by the Kriegbaums and Ms. Shelton in order to provide access and utility service to the portion of the Donleavey property that was not being purchased by the County.

Defendants Kriegbaums and Ms. Shelton demurred to the County's first amended complaint on the ground, inter alia, that the County lacked standing to bring such an action until such time as the County "acquired" property for public use—an event they claimed would not occur until the County obtained title to the portion of the Donleavey property it had agreed to purchase thereby leaving landlocked the remaining or unpurchased portion of the Donleavey property.

In opposition to the demurrer, the County insisted it had standing to bring the action since ownership of the Donleavey property was not a prerequisite to its bringing the section 1240.350 condemnation action—all that was required was that the purchase be "underway." Since its purchase of the Donleavey property was then in escrow, the County asked that the demurrers be denied in their entirety.

In their reply, the Kriegbaums asked the trial court to take judicial notice of the Donleavey documents and reiterated their claim that the County lacked standing. They argued that, even if section 1240.350 were interpreted in such a way so as to provide for condemnation proceedings where title had not yet passed, the County should be required to demonstrate that it had a binding contract that could be specifically enforced so that, at a minimum, an argument of equitable conversion could be made. The Kriegbaums argued that equitable conversion could not occur in this case because the County had no current right to purchase the Donleavey property and would not obtain that right until such time as it was in a position to convey title to the Solitude Lane easement referenced in the Donleavey settlement agreements.

On April 21, 1995, the demurrer came on for hearing. While the County was arguing its case, the court interrupted and the following colloquy took place:

"THE COURT: But the key word there is 'if.' And what happens in this case if you proceed to obtain the easement and then the taking of the Donleavy [sic] property doesn't go through?

---

[3]All statutory references are to the Code of Civil Procedure unless otherwise noted.

"MR. NORGAARD [counsel for the County]: But the taking—everything on the Donleavy [*sic*] property is ready to go. The dollars are in escrow and—

"THE COURT: But what if it doesn't go through?

"MR. NORGAARD: Your Honor, if—if it doesn't go through, the only reason is because the court has decided that it's improper for this easement to be . . . granted. That's the only thing holding up this Donleavy [*sic*] transaction. If the County can obtain prejudgment possession of that easement, the Donleavy [*sic*] deal is done.

"THE COURT: Well, I don't think you're answering my question. . . . And the question in my mind is if you're right and that I should overrule the demurrer, what happens if the Donleavy [*sic*] thing doesn't go through and the easement has already now been taken?

"MR. NORGAARD: Well, Your Honor, that, obviously, could be the—the County would have every right to - to abandon the easement and give it back to the property owner, for one.

"THE COURT: Well, apparently, they'd have the right to keep it too.

"MR. NORGAARD: They'd have the right to keep it, too, correct.

"THE COURT: It wouldn't be for the purpose for which it was asserted to be taken in the first place.

"MR. NORGAARD: That's true.

"THE COURT: So it would become an idle act."

County counsel then argued that the situation before the trial court was no different than that which occurs when a substitute easement is condemned as part of a highway building project and the main project is later changed so that the substitute easement is no longer needed.

The court then made the following findings:

"I read CCP Section 1240.350 to limit the ability of the public entity to acquire the easement right once the subject property has been acquired by eminent domain.

"I think under these facts as alleged, that acquisition has not taken place, and I think that it is premature for the County to exercise its rights under this

statue to claim that easement before the subject property has in fact been acquired by eminent domain.

"The court is going to sustain the demurrer without leave to amend on that basis and deny as moot the County's application for prejudgment possession.

"The defendants have asked for fees and expenses under Section 1260.120, subdivision (c), and without prejudicing that request, now that the court has granted the demurrer, I think that that should be noticed as a separate matter under that code section. So I'll leave that to the defendant to do that if the defendant wishes to do it."

By written order dated May 4, 1995, the trial court noted that it had taken judicial notice of the grant deed recorded February 2, 1994,[4] the April 30, 1991, agreement for settlement of lawsuit, the escrow instructions, and the August 24, 1993, first addendum (to which the County did not object). Based on its reading of these documents, the trial court concluded that the County had not yet acquired the Donleavey property. It then went on to find:

"(1) That the plain language of Code of Civil Procedure Section 1240.350 requires that the County have acquired property necessitating the need to provide utility service to or access to a public road, which is the subject of the litigation; and

"(2) That the County of Fresno has not acquired property giving rise to a need to provide utility service to or access to a public road; and therefore;

"(3) That the County does not currently have standing to pursue this action."

The trial court thus sustained the demurrers to the first amended complaint filed by the Kriegbaums and Ms. Shelton without leave to amend and ordered the first amended complaint dismissed. The trial court also granted the Kriegbaums and Ms. Shelton leave "to request and recover all reasonable expenses" they incurred in defending this action as allowed by section 1260.120, subdivision (c), and in accordance with the procedure specified in section 1268.610.

The County timely filed its notice of appeal on June 8, 1995.

In June of 1995, while this case was pending on appeal, the parties agreed and stipulated to the following:

---

[4]Pursuant to this deed, Ms. Donleavey became the owner of record of an undivided one-half share of the subject property with the remaining half being held by her as trustee for a testamentary trust.

"1. The defendants' motions for attorneys fees and costs may be granted by the Court in the total amount of $23,882.31 for the Kriegbaum defendants and in the total amount of $12,073.54 for defendant Bernadynne Shelton."

"2. The County of Fresno is appealing the Court's judgment and may seek other extraordinary relief. The Court may therefore issue an order staying its judgment dismissing this case and such other collateral relief as the Court may grant including, but not limited to, this stipulated order granting defendants' motions for attorneys' fees and costs."

The trial court's order issued in response to the foregoing stipulation provided as follows:

"The Court, having reviewed the stipulation, and good cause appearing,

"HEREBY ORDERS that defendants' motions for attorneys' fees and costs are granted in their entirety.

"IT IS FURTHER ORDERED that a stay of enforcement is issued, staying the Court's judgment dismissing this case and any additional collateral relief the Court may grant, including, but not limited to, this stipulated order granting defendants' motions for attorneys' fees and costs.

"The stay of enforcement shall remain in effect until the judgment becomes final."

In their letter briefs, the parties admit that their intent in entering into this stipulation was to merely set the *amount* of the attorney's fee award. It was not their intent that the stipulation also encompass Shelton's *right* to those fees. The County thus retained the right to challenge the trial court's ruling in its entirety which would, by necessity, encompass the award of attorney's fees.

The County continued its settlement efforts with the Kriegbaums and Ms. Shelton while this appeal was pending. Settlement was finally reached with the Kriegbaums and, by order of this court dated July 18, 1996, they were dismissed from this action.

The County admits that it acquired title to the Donleavey property and that said title was recorded on October 8, 1996.

On April 15, 1997, the County adopted an amended resolution of necessity reducing the size of the easement from 60 to 30 feet in width.

The County, having obtained title to the Donleavey property, thereafter instituted a new condemnation action against Ms. Shelton, seeking the necessary 30-foot wide easement. On the eve of trial, this second condemnation action (County of Fresno v. Shelton (Super. Ct. Fresno County, 1997, No. 592313-1)) also settled, with the parties agreeing that the County would obtain the 30-foot easement from Ms. Shelton in exchange for a sum certain. The parties have stipulated that this settlement agreement also contained the following language: "3. *Settlement of this Case Only.* The parties agree that this agreement settles and resolves only Fresno County Superior Court Case No. 592313-1. Nothing in this agreement shall be construed as a compromise or resolution of Fresno County's appeal from the judgment entered against it in Fresno County Superior Court Case No. 528982-2. Further, nothing in this agreement shall be interpreted as a waiver of Shelton's claim for costs and attorney fees incurred in Fresno County Superior Court Case No. 528982-2."

I

DISCUSSION

The first issue facing this court is whether the present appeal ought to be dismissed as moot due to the settlement of the second condemnation action. One event that commonly results in mootness is the parties' settlement of the dispute. (*Wax* v. *Infante* (1983) 145 Cal.App.3d 1029, 1030 [194 Cal.Rptr. 14]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs 1 (The Rutter Group 1997) ¶ 5:24, p. 5-5.) "Ordinarily, . . . when a case becomes moot pending an appellate decision 'the court will not proceed to a formal judgment, but will dismiss the appeal.' . . ." (*Paul* v. *Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 [41 Cal.Rptr. 468, 396 P.2d 924], citations omitted.)

But involuntary dismissal of an appeal operates as an affirmance of the judgment below. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 413 [33 Cal.Rptr.2d 85, 878 P.2d 1297]; *Conservatorship of Oliver* (1961) 192 Cal.App.2d 832, 836 [13 Cal.Rptr. 695]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs 1, *supra*, ¶ 5:48, p. 5-15.) If the appellate court wishes to avoid this result (for example, when the trial court granted relief that is rendered improper due to the mootness of the action), it can do so by reversing the judgment solely for the purpose of restoring the matter to the jurisdiction of the superior court with directions for that court to dismiss the action. (See *Paul* v. *Milk Depots, Inc., supra,* 62 Cal.2d at p. 134; *In re Marriage of Macfarlane & Lang* (1992) 8 Cal.App.4th 247, 258 [10 Cal.Rptr.2d 157].) This approach disposes of the case, not merely the proceeding that brought it to the appellate court. (*Paul* v. *Milk Depots, Inc., supra,* 62 Cal.2d at p. 134.)

■ There are, however, times when the appellate court may wish to examine the issues on appeal despite the occurrence of events which render the appeal moot. There are a number of exceptions to the general rule of dismissal that provide for such an approach.

One such exception grants the appellate court the discretion to decide a case which, although technically moot, poses an issue of broad public interest that is likely to recur. (*State of Cal.* ex rel. *State Lands Com.* v. *Superior Court* (1995) 11 Cal.4th 50, 61 [44 Cal.Rptr.2d 399, 900 P.2d 648]; *In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; see *Lundquist* v. *Reusser* (1994) 7 Cal.4th 1193, 1202, fn. 8 [31 Cal.Rptr.2d 776, 875 P.2d 1279]; *Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 868-869, fn. 8 [239 Cal.Rptr. 626, 741 P.2d 124]; *Davenport* v. *Blue Cross of California* (1997) 52 Cal.App.4th 435, 445 [60 Cal.Rptr.2d 641]; *ICN Pharmaceuticals, Inc.* v. *State of California* (1992) 3 Cal.App.4th 1131, 1133-1134 [5 Cal.Rptr.2d 94]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs 1, *supra*, ¶ 5:31, p. 5-8.) A second exception allows an appellate court to refuse to dismiss an appeal if, despite the occurrence of events which render the appeal moot, there remain questions of material fact for the court to determine. (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717]; see *Pillsbury, Madison & Sutro* v. *Schectman* (1997) 55 Cal.App.4th 1279, 1284 [64 Cal.Rptr.2d 698]; *Viejo Bancorp, Inc.* v. *Wood* (1989) 217 Cal.App.3d 200, 205 [265 Cal.Rptr. 620]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs 1, *supra*, ¶ 5:33.1, p. 5-9.)

In *Paul* v. *Milk Depots, Inc., supra*, 62 Cal.2d 129, 134, our high court noted that ". . . an appeal will not be retained solely to decide the question of liability for costs." One court has interpreted this language to mean the appellate court has discretion to refuse to decide a moot case if the only remaining issue is costs. (*Cinnamon Square Shopping Center* v. *Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1843, fn. 2 [30 Cal.Rptr.2d 697].) However, this same court went on to question the wisdom of mechanically denying review on this basis where an attorney's fee award in excess of $20,000 was involved. (*Ibid.*)

■ With these basic principles in mind, we turn to the case *sub judice*. In April of this year, we sent the parties a briefing letter seeking clarification of any dispute that continued to exist regarding the County's entitlement to the easement it sought in the original condemnation action. In its response to this request, the County acknowledged that it had in fact cured the purported standing deficiency (which it continued to claim never existed) and obtained the easement sought in the present action. The County nonetheless believes that this issue, as well as that regarding respondent's entitlement to attorney's fees and costs, remains ripe for review. In advancing this claim, the County states:

"As the Court's records will show, the Court has been heavily involved in bringing about a resolution and settlement of the issues in [this] case. The Court of Appeals initiated and conducted several settlement discussions between [the original parties to the action]. As a result, a smaller . . . easement was obtained through a settlement with the Kriegbaums. Shelton would not settle, however. So the County was forced to initiate a separate action against Shelton on a reduced 30 foot easement. It was this separate action that was recently settled, both parties reserving their rights in this appeal.

"It seems incongruous for the Court to dismiss the appeal now that the County has followed the Court's direction and settled as much of the case as could be settled, while retaining the right to litigate the issue in question. It was at the direction and prompting of the Court that the County narrowed the issues down to the legal issues for review here. . . ." Even though the County has obtained the property interest which it sought in this action, it asks that we decide the issue presented by this appeal because it believes it to be one of great public interest that is likely to recur.

Ms. Shelton, not surprisingly, is of the opinion that the present appeal is moot in that there remain no issues for this court to resolve since the County ultimately acquired the easement it sought to obtain in the original condemnation action. She thus believes no substantial rights of the parties will be affected regardless of the decision we make on the merits.

Ms. Shelton also sees this case as one involving an unusual set of circumstances that are unlikely to repeat themselves. As such, she does not believe this case concerns a matter of sufficient public interest to warrant our exercising our discretion to decide the case despite its mootness.

Finally, she submits that we do not have the discretion to, or alternatively should not, decide this case based on the propriety of the attorney's fee award. To do so, she argues, would unfairly penalize her for not settling with the County. She also points out that an attorney's fee award is not a separately appealable order. But, more importantly, she correctly observes that, regardless of our decision on the standing issue, the end result will be dismissal of the case, thereby entitling her to an award of attorney's fees under section 1268.610.

Section 1268.610 provides:

"(a) Subject to subdivision (b) [which is not applicable herein], the court shall award the defendant his litigation expenses whenever:

"(1) The proceeding is *wholly or partly dismissed for any reason*; or

"(2) Final judgment in the proceeding is that the plaintiff cannot acquire property it sought to acquire in the proceeding.

"(b). . . . . . . . . . . . . . . . . . . . . . . . .

"(c) Litigation expenses under this section shall be claimed in and by a cost bill to be prepared, served, filed, and taxed as in a civil action. If the proceeding is dismissed upon motion of the plaintiff, the cost bill shall be filed within 30 days after notice of entry of judgment." (Italics added.)

If Ms. Shelton prevails on appeal, we will affirm the trial court's final judgment of dismissal which included the award of fees under sections 1260.120, subdivision (c) and 1268.610, subdivision (a)(2).[5] Conversely, if we find in favor of the County, we would ordinarily reverse the judgment and remand the matter to the trial court with directions to reinstate the condemnation action. However, since nothing remains to condemn, the action would be dismissed as moot. Thus, under this scenario, section 1268.610, subdivision (a)(1), entitles Ms. Shelton to an award of fees. Since the County has already agreed to the amount of those fees, not even that is in dispute. The mootness of this appeal thus becomes apparent.

We must decide then whether to exercise our discretion to decide the standing issue *solely* as a matter of public interest. We believe this issue is one of significant and continuing public interest that is likely to recur. It is also one which has yet to be addressed in any published decision in this state. We therefore invoke the exception to the mootness doctrine and proceed to decide the issue on its merits.

II

THE DEMURRER WAS NOT PROPERLY SUSTAINED

██ A demurrer is a pleading used to challenge the legal sufficiency of an opponent's pleading based on defects that appear either on the face of the

---

[5]Section 1260.120, subdivision (c) states: "If the court determines that the plaintiff does not have the right to acquire by eminent domain any property described in the complaint, it shall order either of the following: [¶] (1) Immediate dismissal of the proceeding as to that property. [¶] (2) Conditional dismissal of the proceeding as to that property unless such corrective and remedial action as the court may prescribe has been taken within the period prescribed by the court in the order. An order made under this paragraph may impose such limitations and conditions as the court determines to be just under the circumstances of the particular case including the requirement that the plaintiff pay to the defendant all or part of the reasonable litigation expenses necessarily incurred by the defendant because of the plaintiff's failure or omission which constituted the basis of the objection to the right to take."

pleading under attack or from matters outside the pleading that are judicially noticeable. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

A defendant in a condemnation action may object, by demurrer as provided in section 430.30, to the plaintiff's right to take under the Eminent Domain Law on any ground authorized by section 1250.360 or 1250.370. (§ 1250.350.) "The demurrer . . . shall state the specific ground upon which the objection is taken." (§ 1250.350.) The objection may be based on more than one ground and the grounds may be inconsistent. (*Ibid.*)

Since a resolution of necessity was adopted by the board of supervisors in this case, section 1250.360 governs the grounds upon which a demurrer may lie in this action. It provides as follows:

"Grounds for objection to the right to take, regardless of whether the plaintiff has adopted a resolution of necessity that satisfies the requirements of Article 2 (commencing with Section 1245.210) of Chapter 4, include:

"(a) The plaintiff is not authorized by statute to exercise the power of eminent domain for the purpose stated in the complaint.

"(b) The stated purpose is not a public use.

" . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) The described property is not subject to acquisition by the power of eminent domain for the stated purpose.

" . . . . . . . . . . . . . . . . . . . . . . . . . .

"(h) Any other ground provided by law."

Other grounds recognized by law can be found in section 430.10. As pertinent, this section provides that: "The party against whom a complaint . . . has been filed may object, by demurrer . . . to the pleading . . . on the [ground that the] pleading does not state facts sufficient to constitute a cause of action. . . ." (§ 430.10, subd. (e).)

■ Where, as here, it is alleged that a party lacks standing to sue, the complaint can be challenged by general demurrer for failure to state a cause of action *in this plaintiff*. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial 1 (The Rutter Group 1997) ¶ 7.77.3, p. 7-29.)

■ The standard of review on appeal from a judgment dismissing an action after sustaining a demurrer is well settled and can be summarized as

follows: "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.]" (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; accord, *Blatty* v. *New York Times Co.* (1986) 42 Cal.3d 1033, 1040 [232 Cal.Rptr. 542, 728 P.2d 1177]; *Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318; *Hayter Trucking, Inc.* v. *Shell Western E & P, Inc.* (1993) 18 Cal.App.4th 1, 12-13 [22 Cal.Rptr.2d 229].)

As a court of review, we are "not bound by the trial court's construction of the pleadings. Rather, the reviewing court must make its own independent judgment thereon, even as to matters not expressly ruled upon by the trial court." (*Hayter Trucking, Inc.* v. *Shell Western E & P, Inc., supra,* 18 Cal.App.4th at p. 13.) Where, as here, the demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318; accord, *Blatty* v. *New York Times Co., supra,* 42 Cal.3d at pp. 1040-1041.) The burden of proving such a reasonable possibility lies with the plaintiff. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318; *Blatty* v. *New York Times Co., supra,* 42 Cal.3d at p. 1041.) With these principles in mind, we now turn to the specific issue raised on appeal.

A.   *Statutory Interpretation*

■   A court should begin the process of statutory interpretation by examining the actual language of the statute. (E.g., *Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404]; *Curl* v. *Superior Court* (1990) 51 Cal.3d 1292, 1300 [276 Cal.Rptr. 49, 801 P.2d 292]; *Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 [8 Cal.Rptr.2d 298].) The courts should give to those words their ordinary, everyday meaning (e.g., *Romano* v. *Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 493 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322]; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33]; *In re Eric H.* (1997) 54 Cal.App.4th 955, 965 [63 Cal.Rptr.2d 230]) unless the Legislature has ascribed to them a special meaning. (*Security Pacific National Bank* v.

*Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557]; *Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 156 [137 Cal.Rptr. 154, 561 P.2d 244]; *U.D. Registry, Inc.* v. *Municipal Court* (1996) 50 Cal.App.4th 671, 674 [57 Cal.Rptr.2d 788].) If this meaning is without ambiguity, doubt, or uncertainty, then the language controls (*Security Pacific National Bank* v. *Wozab, supra,* 51 Cal.3d at p. 998; *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; *Halbert's Lumber, Inc.* v. *Lucky Stores, Inc., supra,* 6 Cal.App.4th at p. 1238) and is generally binding on the courts (*Security Pacific National Bank* v. *Wozab, supra,* 51 Cal.3d at p. 998; *Great Lakes Properties, Inc.* v. *City of El Segundo, supra,* 19 Cal.3d at p. 156; *O'Kane* v. *Irvine* (1996) 47 Cal.App.4th 207, 211 [54 Cal.Rptr.2d 549]).

As previously noted, the trial court sustained the demurrer without leave to amend based on its belief that the County lacked standing to bring the condemnation action under section 1240.350 until such time as it had actually *acquired* title to the agreed-upon portion of the Donleavey property and thereby caused the remaining unacquired portion of the Donleavey property to become landlocked and in need of substitute access. It is clear the trial court construed these events as conditions precedent to the County's exercising its powers of eminent domain to acquire the substitute property as reasonably necessary and appropriate under section 1240.350, subdivision (a).

By doing so, the trial court omitted the word "acquires" from the statute and replaced it with the past tense "acquired," thereby disregarding the directives of section 1858.[6] But even more significantly, the trial court appears to have not taken into account section 1235.050's legislative mandate that the statutes found in title 7 of the Eminent Domain Law, of which section 1240.350 is a part, be construed so that the "present tense includes the past and future tenses; and the future, the present."[7]

---

[6]This section declares that it is the function of a judge interpreting a statute "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted. . . ."

[7]We feel it is important to note that counsel for the County acknowledged he did not bring the foregoing statutory definitions to the trial court's attention. Judges are asked to rule on legal issues when under great time pressure. They are often in a position where a failure of one of the parties to alert them as to the applicable law will result in the judge's not being aware of all the pertinent law before he or she rules. Judges cannot reasonably be expected to be aware of every nuance or arcane facet of the law. It is the attorneys' responsibility to make sure the judge is well versed in the law. That is not to say that judges need not do their own research. It is to say that judges have enough of a burden without having to do the lawyer's work also. It is, in our view, unfortunate that Judge Kane was not made aware of the applicable

## B. *Statutory Application*

When read in light of this directive, section 1240.350 clearly authorized the County to initiate this eminent domain proceeding against the parcel owned by Ms. Shelton. The County was "acquiring" an interest in a portion of the Donleavey property that would leave the unacquired portion of the Donleavey property landlocked. This action was initiated for the sole purpose of providing alternate access to that unacquired portion of the Donleavey property. The trial court thus erred in sustaining the demurrer without leave to amend and dismissing the action.

### III, IV*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

In accordance with the views expressed herein, the judgment of the trial court is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion. Both sides on appeal are to bear their own costs.

Vartabedian, J., and Harris, J., concurred.

---

definitional provision as was this court. An appeal, as well as the time of a busy trial judge, might have been saved had this been done.

*See footnote, *ante,* page 996.