Filed 4/30/13  Roy v. Steinberg CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KEN ROY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ROBERT K. STEINBERG et al.,<br><br>    Defendants and Respondents. | B232053<br><br>(Los Angeles County<br> Super. Ct. No. BC419528) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Affirmed.

The Law Office of Stan Stern and Stan Stern; Frederick Barak for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Roy F. Weatherup and Bartley L. Becker for Defendants and Respondents.

## INTRODUCTION

Plaintiff and appellant Ken Roy appeals from the judgment dismissing his claims for breach of contract and legal malpractice against defendants and respondents Robert K. Steinberg and the Law Offices of Robert K. Steinberg (collectively referred to as Steinberg). The trial court sustained Steinberg's demurrer on the ground that Roy lacked standing to bring either claim because he was not in privity with Steinberg. Roy contends that the court incorrectly found that he was not a party to the retainer agreements on which the two claims are based. He further contends that the court should have granted him leave to amend to plead the existence of oral and implied agreements between Steinberg and Roy that give Roy standing to sue. We find no error, and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Although Roy is now the sole remaining plaintiff, Griffin Broadband Communications, Inc. (Griffin) and Total TV of Fort Irwin, LLC (Total TV) were the original two plaintiffs who sued Steinberg.[1] Their judicial council form complaint, filed on August 11, 2009, alleged causes of action for breach of contract and general negligence on a legal malpractice theory. The complaint alleged that Griffin and Total TV entered into a September 8, 2004 written agreement with Steinberg in which he agreed to represent them in seeking "compensation for meritorious claims for damages arising from a franchise agreement or contract with the Department of the Army to furnish cable services to the Army installation at Fort Irwin, California." The complaint alleged that Steinberg breached its agreement with Griffin and Total TV and committed legal malpractice by

---

[1]     Although Roy's relationship to Griffin and Total TV is not set forth in the complaint, the parties agree that Roy held an interest in both entities.

2

mishandling a suit in the Court of Federal Claims. Steinberg demurred on the ground that the complaint was uncertain, ambiguous and unintelligible, but the trial court overruled the demurrer, and Steinberg answered the complaint.

On March 19, 2010, plaintiffs filed an ex parte application seeking to amend the complaint to add Roy as a plaintiff "both individually and doing business as Griffin Broadband Communications, Inc. and Total TV," because Roy was a "mistakenly omitted party" who was a "signatory to the March [*sic*] 8, 2004 employment contract." The court granted the application and ordered the complaint amended.

On March 29, 2010, plaintiffs successfully moved for leave to amend the complaint to include additional allegations against Steinberg regarding the alleged breach of another retainer agreement dated November 16, 2006, and to allege that (1) "[p]laintiffs employed [Steinberg's] services to resolve their issues involving a franchise agreement or contract with the Department of the Army to furnish cable services to the Army installation at Fort Irwin, California" and to pursue claims based on that agreement; and (2) Steinberg "[c]ommitted legal malpractice by failing to competently advise and counsel plaintiffs and resolve their issues involving the franchise agreement or contract with the Department of the Army" as well as by mishandling the Court of Federal Claims suit.

On May 17, 2010, plaintiffs again successfully moved for leave to amend the complaint to add numerous additional allegations concerning negligence and legal malpractice by Steinberg. Plaintiffs also voluntarily dismissed Griffin and Total TV as parties, leaving only Roy as plaintiff, based on their belief that Griffin and Total TV could not prosecute the action because these corporate entities were no longer in good standing and that any right to reinstatement had permanently lapsed. However, in July 2010, plaintiffs filed a motion to set aside the dismissal with respect to Griffin, which they had learned was still eligible for reinstatement.

3

The court denied the motion on the ground that Griffin was still a defunct corporation and could not move to set aside its dismissal from the action until it made the required payments of administrative fees and taxes.[2]

On September 8, 2010, plaintiffs once again moved to amend the complaint, expanding on and clarifying the allegations of negligence by Steinberg. The Third Amended Complaint (TAC) alleges that on or about September 8, 2004 and November 16, 2006, plaintiffs (defined as "[a]ll named plaintiffs not dismissed as parties to this action" because at that point the court had not yet ruled on the motion to set aside the dismissal of Griffin) and Steinberg entered written agreements, the essential terms of which were to retain defendants' services to resolve plaintiff's issues involving a franchise agreement with the Department of the Army to furnish cable services to the Army installation at Fort Irwin, California, and to seek compensation for meritorious claims arising therefrom. The two agreements are not attached as exhibits to the TAC.

The TAC alleges that Steinberg breached the above agreements and committed legal malpractice by (1) "failing to competently advise and counsel plaintiffs and resolve plaintiffs' issues involving the franchise agreement or contract with the Department of the Army, by misconstruing plaintiffs' case and mishandling the Court of Federal Claims Case"; (2) failing to provide conflict of interest notices and obtain written conflict waivers from their jointly represented clients, Griffin, Total TV and Roy; (3) failing to maintain adequate client communication; (4) misrepresenting Steinberg's expertise and experience litigating against federal government agencies; (5) failing to secure a public hearing with regard to the Army's intent to revoke the franchise agreement; (6) failing to appeal

[2] Plaintiffs do not challenge the order denying the motion to set aside the dismissal of Griffin from the case.

4

the revocation of the franchise agreement; (7) failing to institute judicial proceedings regarding the revocation; (8) failing to provide competent counsel regarding the protection of plaintiffs' assets, equipment and infrastructure from misappropriation and damage; (9) failing to provide competent counsel regarding insurance coverage for plaintiffs' losses; (10) failing to "minimize plaintiff's damages due to deprivation of the franchise agreement by the Army"; (11) failing to prosecute or advise action regarding wrongs committed by Clark Construction Company, Pinnacle Management, and the entities that succeeded plaintiffs as providers of cable services; (12) proceeding with a Court of Claims action on behalf of Griffin and Total TV when they were no longer entities in good standing; (13) failing to provide competent advice and counsel regarding the reinstatement of Total TV; and (14) generating unreasonable, unnecessary and excessive legal fees.

The trial court gave plaintiffs leave to file the TAC over Steinberg's objections. Steinberg demurred to the TAC, arguing in part that Roy did not have standing to pursue the claims because he was not a party to the retainer agreements and was not a real party in interest. Steinberg referred to the two retainer agreements referenced in the TAC, which had been attached as exhibits to plaintiffs' earlier-filed reply in support of the motion to set aside the dismissal of Griffin. Invoking Evidence Code section 452, subdivision (d), which provides that a court may take judicial notice of California court records, Steinberg requested that the court take judicial notice of the earlier-filed reply in support of plaintiffs' motion to set aside the dismissal, including the retainer agreements. Roy did not object to the request for judicial notice.

The September 8, 2004 retainer agreement engaging Steinberg's services defines the "Client" as Total TV, "powered by" Griffin. Bruce Jones, the general manager of Total TV, signed the agreement on behalf of Total TV and Griffin; Roy is not referenced in the agreement and did not sign it. The contract reflects

Steinberg's agreement to represent Total TV and Griffin to seek the amendment of the franchise agreement with the Department of the Army and to resolve issues involving the franchise agreement, as well as to represent Total TV and Griffin in the event that they desired to sell their interests.

The November 16, 2006 retainer agreement similarly defines the "Client" as Total TV, powered by Griffin. It states that Steinberg "will represent (Client) in a complaint against the United States of America, Department of the Army. The Complaint will be for the taking of private property for public use, in violation of the Fifth Amendment." On a signature line for Total TV powered by Griffin Broadband, Roy signed as "its board member." Roy also signed on a separate signature line designated simply for "Ken Roy."

The trial court found that Roy lacked standing to bring the lawsuit, given that the parties to the subject contracts were defendants, on the one hand, and Griffin Broadband and Total TV, on the other hand. Thus, the court sustained Steinberg's demurrer to the TAC without leave to amend and entered an order of dismissal, from which Roy appeals.

## DISCUSSION

Roy asserts that the trial court erred in dismissing his breach of contract and legal malpractice claims for lack of privity of contract between Roy and Steinberg. On appeal, he contends that he and Steinberg were parties to agreements, both express and implied, that Steinberg would represent him. He contends that the trial court erred in sustaining the demurrer, and even if the demurrer was properly sustained, the trial court should have granted him leave to amend.

6

I. *Standard of Review*

On review from an order sustaining a demurrer, "'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.'" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We may affirm an order sustaining a demurrer if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the proceedings below. (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031.)

II. *Privity Requirement*

It is elementary that a party generally has no standing to sue another for breach of contract when the parties are not in privity. (*Howard Contracting, Inc. v. G.A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 60.) Similarly, "an attorney will normally be held liable for malpractice only to the client with whom the attorney stands in privity of contract, and not to third parties." (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 529; see *Schick v. Lerner* (1987) 193 Cal.App.3d 1321, 1329; *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 831 ["In general, an attorney owes a duty of care, and is thus answerable for a breach of that duty, only to the client with whom he or she stands in privity."].) Although there are limited exceptions permitting a third party to sue, such as in the case of an intended beneficiary (*Borissoff v. Taylor & Faust, supra*, 33 Cal.4th at p. 530; *Skarbrevik v. Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 701 (*Skarbrevik*), Roy does not claim to have standing as a third party; nor does the TAC allege facts that would support such standing. Further, Roy contends that he "makes no claim that he may assert rights otherwise

belonging to or that he 'stands in the shoes' of either Griffin Broadband and/or Total TV." Rather, he contends that he is suing Steinberg in his own individual capacity based on a "direct, contract-based attorney client relationship."

III. *The Trial Court Properly Sustained the Demurrer*

The TAC alleges that the parties entered two written agreements, dated September 8, 2004 and November 16, 2006, that gave rise to the claim for breach of contract against Steinberg. The same conduct that allegedly constitutes breaches of contract is also alleged as the basis for the legal malpractice claim.

In support of his demurrer, Steinberg contended that copies of the retainer agreements were subject to judicial notice because plaintiff previously had submitted them as exhibits in support of another motion. Steinberg argued that the retainer agreements foreclose Roy's claims because they demonstrate that he was not a party to them and thus has no standing to bring the claims against Steinberg. The trial court agreed, and so do we.

A. *The Court Properly Considered the Retainer Agreements*

The record does not reflect the trial court's ruling on the request for judicial notice of the retainer agreements, but the court's order sustaining the demurrer reflects that its decision was based squarely on the contents of those agreements. Roy did not object below (or on appeal) to Steinberg's request for judicial notice, and thus any objection is forfeited. In any event, we find that the court did not err in considering the retainer agreements.

"[A] demurrer may be sustained where judicially noticeable facts render the pleading defective." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751 (*Scott*).) In particular, if it is apparent from matters judicially noticeable that a plaintiff lacks standing, a general demurrer lies for

8

failure to state a cause of action in this plaintiff. (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1009.)

Although Evidence Code section 452, subdivision (d) permits a court to take judicial notice of court records, it cannot take judicial notice of the truth of hearsay allegations in decisions and court files. (*In re Vicks* (2013) 56 Cal.4th 274, 314; *In re David C.* (1984) 152 Cal.App.3d 1189, 1205.) Rather, a court generally may only take judicial notice of the *existence* of each document in a court file, including the truth of results reached. (*In re Vicks, supra,* 56 Cal.4th at p. 314; *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882; *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.) However, "[w]here . . . judicial notice is requested of a *legally operative* document – like a contract – the court may take notice not only of the fact of the document and its recording or publication, but also facts that clearly derive from its *legal effect*," where the authenticity and enforceability of the document are not at issue and its meaning is not reasonably subject to dispute. (*Scott, supra,* 214 Cal.App.4th at p. 754; see also *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264, 266.)

The authenticity and enforceability of the two retainer agreements are not disputed; indeed, Roy himself attached them to a pleading. Moreover, as further discussed below, we conclude that the meaning of those agreements is not reasonably subject to dispute. Thus, the court did not err in taking judicial notice of them or in relying on them as the basis for sustaining the demurrer.

B. *September 8, 2004 Retainer Agreement*

On appeal, Roy does not assert that he was a party to the September 8, 2004 retainer agreement, which defines the "Client" as Total TV "powered by" Griffin and which was executed by Jones, Total TV's general manager. Indeed, there is no mention of Roy in the agreement, in which Total TV and Griffin retain Steinberg's

services to resolve issues regarding Total TV's franchise agreement with the Department of the Army and to represent Total TV and Griffin in the event that they desired to sell their interests.

It is well-established that "[i]n representing a corporation, an attorney's client is the *corporate entity*, not individual shareholders or directors, and the individual shareholders or directors cannot presume that corporate counsel is protecting their interests." (*La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773,784; see *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 731 (*Koo*) ["'The attorney for a corporation represents it, its stockholders and its officers in their representative capacity. He in nowise represents the officers personally.'"]; *Skarbrevik, supra,* 231 Cal.App.3d at p. 704 ["[C]orporate counsel's direct duty is to the client corporation, not to the shareholders individually, even though the legal advice rendered to the corporation may affect the shareholders."]; Cal. Rules of Professional Conduct, rule 3–600(A) ["In representing an organization, a member shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement."] Thus, even if Roy were the sole owner of Griffin and Total TV, Steinberg's representation of those corporate entities would not extend to representation of Roy in his individual capacity. Further, the fact that Roy himself may have suffered financially as a result of Total TV's woes does not change the result. (*Skarbrevik, supra,* 231 Cal.App.3d at p. 704.) Thus, because the September 8, 2004 agreement defines Steinberg's client as Total TV and Griffin only, Roy has no standing to sue Steinberg based on that agreement.

10

C. *November 16, 2006 Retainer Agreement*

Roy maintains that he was a party to the November 16, 2006 retainer agreement and that Steinberg agreed to represent him in his personal capacity. We apply de novo review to examine whether the agreement is susceptible to the interpretation that Roy was intended to be Steinberg's client. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.)

Like the September 8, 2004 agreement, the November 16, 2006 agreement defines the "Client" as Total TV, powered by Griffin, and nowhere states that Roy is to be Steinberg's client. Roy asserts that he insisted on being included as a client, and contends that the fact that he signed the agreement in two places, as Total TV's "board member" as well as on a separate signature line designated simply for "Ken Roy," creates a factual issue as to whether he was intended to be an individual client. However, the agreement's definition of the "Client" as Total TV and Griffin leaves no ambiguity as to the intended client.

Moreover, we note that the agreement provides for only a limited scope of representation, stating that Steinberg "will represent (Client) in a complaint against the United States of America, Department of the Army," alleging a taking of private property for public use. Roy does not allege that he personally owned the property that was the subject of the takings claim such that he would have had standing to bring that claim. Indeed, the complaint Steinberg subsequently brought against the federal government alleging an unconstitutional taking was brought solely on behalf of plaintiffs Griffin and Total TV, not Roy.[3] We conclude that the

---

[3] We may properly take judicial notice of the parties listed as plaintiffs in the Court of Federal Claims' decision that was included in Steinberg's request for judicial notice submitted with his demurrer. (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9 [in reviewing demurrer ruling, we may consider facts judicially noticed by the trial court or those which the trial court properly could have noticed].)

November 16, 2006 agreement, construed as a whole and in the context of the surrounding circumstances, is not reasonably susceptible to the interpretation urged by Roy. He was not a party to the agreement and has no standing to sue on it. Therefore, the trial court correctly sustained the demurrer on that ground.

IV.     *The Trial Court Properly Denied Leave to Amend*

Although Roy amended his complaint four times, he argues that he was not afforded a single opportunity to replead to include facts supporting his individual standing. "When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.] Leave to amend should not be granted where amendment would be futile. [Citation.]" (*Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 211.) "In assessing whether plaintiffs should be allowed leave to amend, . . . [w]e are not limited to plaintiffs' theory of recovery or '"form of action"' pled." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 870.) We conclude that the trial court correctly determined that it would be futile to grant Roy leave to amend.

As we have discussed above, the retainer agreements themselves foreclose any argument that Roy was a party to those agreements or that they created an attorney-client relationship with him in his personal capacity. However, Roy asserts that there were additional oral and implied agreements between Roy and Steinberg creating an attorney-client relationship, and he contends he should have the chance to amend the complaint again to allege such agreements.

First, Roy asserts that Steinberg *orally* agreed to represent him personally in an August 2004 conversation Steinberg had with Total TV's general manager,

Bruce Jones, prior to the execution of the first retainer agreement. Roy contends vaguely that Jones and Steinberg discussed "complaints against the Army and another contractor threatening Total [TV's] ability to continue operating at the Fort Irwin, California, Army Base." Roy does not allege that he himself was a party to the franchise agreement with the Army and it is unclear why Steinberg would represent him personally with respect to grievances that belonged to Total TV, the party that contracted with the Army to provide cable services. Roy has not satisfied his burden to demonstrate a reasonable possibility that he could plead an oral promise by Steinberg that is "'definite enough that a court can determine the scope of the duty'" and has a "'sufficiently defined'" scope of performance. (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 209 [describing pleading requirements for oral contract].) Thus, the court did not abuse its discretion in denying him leave to amend to plead an oral agreement with Steinberg.

Roy also contends that, if granted leave to amend, he could plead an *implied* contract regarding Steinberg's provision of legal services for Roy. "'An implied contract is one, the existence and terms of which are manifested by conduct.' (Civ. Code, § 1621.) 'The distinction between *express* and *implied in fact* contracts relates only to the *manifestation of assent*; both types are based upon the expressed or apparent intention of the parties.' [Citation.]" (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1732-1733.) Certainly, a formal retainer and fee agreement is not necessary to create an attorney-client relationship and such a relationship, with all its attendant duties, may be created by an implied contract. (*Rickley v. Goodfriend* (2012) 207 Cal.App.4th 1528, 1538; *Koo, supra,* 109 Cal.App.4th at p. 729.) "'"'When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established prima facie.' [Citation.]"' [Citation.]" (*Shen v. Miller* (2012) 212 Cal.App.4th 48,

13

57.) We examine the totality of the circumstances in determining the existence of an attorney-client relationship. (*Koo, supra,* 109 Cal.App.4th at p. 732.)

Roy asserts the following as the basis for the implied contract: in November 2005, Steinberg began providing advice, counsel and document review services to Roy personally regarding a $1.68 million small business loan which financed Griffin and Total TV and for which Roy was personally liable as a guarantor of the loan. After the lender filed a collection action on the loan in December 2006, naming as defendants Griffin, Total TV, and Roy, Steinberg provided advice and counsel with respect to the suit, including advising Roy not to execute a proposed settlement agreement. In December 2007, the lender procured a joint and several judgment against Griffin, Total TV, and Roy in an amount exceeding $2 million.

The fallacy in Roy's argument is that, even if he and Steinberg had an implied contract with respect to the provision of legal services regarding collection action on the SBA loan for which Roy was personally liable, none of the negligent or breaching conduct alleged in the TAC, or the previous iterations of the complaint, is connected with that loan. Rather, the TAC revolves around Steinberg's advice and representation in connection with the Army franchise agreement with Total TV, and the alleged bungling of the Court of Claims action based on that franchise agreement, which is far removed from the matter of Roy's personal guarantee of the SBA loan funding Total TV. Thus, there is a disconnect between the alleged implied contract that created an attorney-client relationship concerning the SBA loan, and the asserted negligence and breach of contract in the TAC.

Further, Roy has not asserted that Steinberg's advice or representation with respect to the SBA loan proceedings was faulty, or that he could have obtained different result but for Steinberg's subpar representation. (See *Orrick Herrington & Sutcliffe v. Superior Court* (2003) 107 Cal.App.4th 1052, 1057 [plaintiff alleging

14

legal malpractice in the prosecution of a legal claim must show that, but for the negligence of the attorney, a better result could have been obtained in the underlying action].) Thus, he has not carried his burden to prove that there is a reasonable possibility that his proposed amendment would state a valid claim. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [plaintiff has "the burden of proving that an amendment would cure the defect"]; *Medina v. Safe-Guard Products, Internat., Inc.* (2008) 164 Cal.App.4th 105, 112-113, fn. 8 [burden is on the plaintiff to show in what manner he can amend the complaint and how that amendment will change the legal effect of the pleading].)[4] We therefore find that the trial court did not err in denying leave to amend.

---

[4] Roy also asserts that an implied contract creating an attorney-client relationship arose out of the fact that he paid Steinberg's legal fees to prosecute the Court of Federal Claims action and the subsequent appeal on behalf of Total TV and Griffin. However, "payment of attorney fees alone does not determine an attorney-client relationship; it is merely a factor." (*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1404.)

15

**DISPOSITION**

The judgment is affirmed.  Respondent shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.


We concur:


MANELLA, J.


SUZUKAWA, J.