[No. D048431. Fourth Dist., Div. One. Nov. 20, 2006.]

EDWARD GOOLD, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
LAURA GOOLD, Real Party in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exceptions of parts II, III, IV and V of the DISCUSSION.

**COUNSEL**

Gary Harrison for Petitioner.

No appearance for Respondent.

Patrick L. McCrary for Real Party in Interest.

**OPINION**

**McDONALD, J.**—Edward Goold (Husband) filed this petition for writ of review challenging an order finding him in contempt for violating standard family law restraining orders prohibiting him from encumbering or transferring property during the pendency of the marital dissolution proceeding between him and his wife Laura Goold (Wife). In his petition, Husband contends the trial court acted in excess of its jurisdiction because: (1) it awarded Wife attorney fees pursuant to Code of Civil Procedure section 1218, subdivision (a);[1] (2) its order and statement of decision do not cite supporting facts; (3) the restraining orders became unenforceable as vague as a result of the parties' stipulations; and (4) the restraining orders expired on the trial court's oral finding of the effective date of the parties' marital dissolution. Husband also contends the trial court erred by: (1) admitting his deposition testimony and exhibits admitted at his deposition; (2) admitting photocopies of certain documents; and (3) not reducing the amount of its attorney fee award for dismissed contempt counts.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 13, 2003, Wife caused a summons (Summons) to be issued to Husband regarding her petition for dissolution of their marriage.[2] On its reverse side, the Summons set forth the following "Standard Family Law

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Although the record does not contain a copy of Wife's petition for dissolution of marriage, the parties assume, and the record supports the inference, that the Summons was issued with

Restraining Orders": "Starting immediately, *you* and your spouse *are restrained from* [¶] . . . [¶] 3. *transferring, encumbering,* hypothecating, concealing, or in any way disposing of *any property, real* or personal, whether community, quasi-community, or separate, *without the written consent of the other party or an order of the court,* except in the usual course of business or for the necessities of life. . . ." (Italics added.) On February 24, Husband was served with the Summons and Wife's marital dissolution petition.[3]

At a January 16, 2004 hearing in the marital dissolution proceeding, the parties stated on the record their stipulation regarding division of their property. Pursuant to the parties' stipulation, Husband would receive all of his businesses and all real property owned by him individually, with any third party, or in the names of any of his businesses, "except for the Duffy residence [the Duffy Property], which is awarded to Wife."[4] At that hearing, Husband stated the then current balance of the first trust deed loan on the Duffy Property was about $252,000. Also, his counsel stated: "My client informed me in the presence of [Wife's counsel] that there [is] a first trust deed on the property, there [is] no second trust deed or any junior mortgage, and there is no outstanding equity loan." The trial court accepted the parties' stipulation. Furthermore, the court stated: "We will terminate the marriage effective today." Husband's counsel informed the court that he would prepare a draft of the judgment.

On February 12, Husband signed a trust deed granting Wells Fargo Bank, N.A. (Bank), a $100,000 security interest in the Duffy Property. That trust deed was recorded on March 4. The trust deed secured an equity line of credit on which Husband drew $100,000 shortly thereafter.

On April 14, Husband signed a trust deed granting Mike's Remodeling a $150,000 security interest in the Duffy Property. That trust deed was recorded on April 20. The trust deed secured a promissory note Husband gave to Mike's Remodeling primarily for work done on his business or joint venture properties.

---

respect to her dissolution petition. The Summons listed its case number as "DS23169." Accordingly, for purposes of this petition, we presume the Summons was issued with respect to Wife's dissolution petition.

[3] Although the copy of the proof of service contained in the record names "Cheryl Pangelinan" as the respondent served with those documents, it appears that Pangelinan was, in fact, the person who served Husband. Nevertheless, the trial court found, and Husband does not dispute, that he was served with the Summons.

[4] Before and on January 16, 2004, Husband, apparently as sole trustee, held title to the community residence located on Duffy Way in Bonita (the Duffy Property). At Husband's deposition on August 6, 2004, he admitted title to the Duffy Property had been placed in his name in January 2003. Husband and Wife had originally acquired the Duffy Property in 1997 as joint tenants.

On May 8, Husband sold the Duffy Property to Grace Rzeslawski for about $600,000.[5] On May 27, he signed a grant deed transferring title to the Duffy Property to Rzeslawski. That grant deed was recorded on May 28.

On August 4, the trial court entered the judgment incorporating its rulings at the January 16 hearing. The judgment stated: "Judgment of dissolution is entered. Marital status is terminated and the parties are restored to the status of unmarried persons . . . on . . . January 16, 2004." It further stated: "Property division is ordered as set forth in . . . [the] Attachment to Judgment." The attachment to judgment stated, inter alia:

"**Date of Separation** [¶] 1. The date of separation of the parties is January 17, 2003.

"**Division of Real Property** [¶] 2. Wife is awarded the [Duffy Property] with all debts and encumbrances thereon. [¶] 2.1. Husband represents and warrants that the only mortgage or encumbrance on the aforesaid property is the first mortgage and there are no other liens or equity lines of credit against the property. [¶] 2.2. Wife takes the property subject to a mortgage balance no greater than that which was on the property as of the date of separation and Husband shall, if the mortgage is greater, pay the difference to Wife less any sums previously paid to her arising from a refinance of the property."

On April 26, 2005, Wife filed an order to show cause and affidavit for contempt (OSC) alleging eight counts of contempt against Husband and requesting an award of attorney fees and costs incurred in pursuing her contempt action.[6] The trial court conducted a trial on Wife's contempt allegations and made oral findings of fact and rulings in Wife's favor.[7] On December 10, the trial court issued written findings and order after hearing (apparently after a further hearing regarding attorney fees and costs), stating:

---

[5] Rzeslawski is the sister of one of Husband's agents. Husband met Rzeslawski in 2000 and had occasionally socialized with her prior to the sale.

[6] Wife filed the OSC using California Judicial Council Form FL-410. In her affidavit attached to form FL-410, Wife alleged, inter alia, three counts of contempt for Husband's encumbrances on and transfer of the Duffy Property described *ante*, which violated the restraining orders set forth in the Summons.

[7] The record submitted by Husband does not include a transcript or minutes from that trial. Husband represents, and Wife does not dispute, that a trial was conducted. Furthermore, the written statement of decision subsequently filed by the trial court on February 22, 2006, stated the court heard the contempt allegations on nine separate hearing dates and received both oral and documentary evidence. Accordingly, we assume a trial was conducted on Wife's contempt allegations and the court made oral findings of fact and rulings during that trial.

"1. **ATTORNEYS FEES**: Pursuant to [section] 1218[, subdivision] (a), the Court orders [Husband] to pay [Wife] the following attorneys fees and costs: [¶] Attorneys Fees: $25,582.00 [¶] Costs: $2,527.00 [¶] TOTAL DUE: $28,109.00

"2. **SENTENCING**: Pursuant to [section] 1218[, subdivision] (c), the Court sentences [Husband] to 360 hours in custody. [¶] The Court will consider, upon appropriate application, work furlough. [¶] . . . [¶]

"3. **STAY**: The sentencing and attorneys fees are stayed pending the hearing of December 15, 2005."

On December 12, Husband filed a notice of appeal challenging the order finding him guilty of three counts of contempt and awarding Wife attorney fees.

On February 22, 2006, the trial court issued its written statement of decision after the trial on Wife's contempt allegations. That statement of decision included the following findings of fact:

"A. That there was a valid order.

"(1) . . . The Court finds that the Summons contained a Family Law Restraining Order that became effective as to both parties upon service of the Summons and Petition on [Husband]. The Court finds that [Husband] was served with the Summons on February 24, 2003. . . . [¶] . . . [¶]

"(3) The Court finds that the restraining orders were effective through August 4, 2004, the date the Judgment of Dissolution that divided the parties' assets was filed with the Court. [¶] (a) The Court finds that pursuant to Family Code section 233, the Standard Family Law Restraining Orders are in effect until the final judgment is entered. [¶] (b) The Court finds that the final judgment is entered when the Judgment is filed with the Court, not the date the decision is rendered.

"B. That [Husband] had knowledge of the restraining orders: The Court finds that [Husband] had knowledge of the restraining orders.

"C. That [Husband] had the ability to comply and (willfully) violated the Standard Family Law Restraining Orders: The Court finds that [Husband] had the ability to comply with the Standard Family Law Restraining [Orders] and that he violated the Standard Family Law Restraining Orders as follows:

"(1) Count 1: The violation was established by [Husband's] own admission in his deposition of August 6, 2004. The Court finds that [Husband] admitted

encumbering and did encumber the Duffy [Property] on February 12, 2004, by withdrawing $100,000 on an equity line of credit he secured by the Duffy [Property].

"(2) Count 2: The violation was established by [Husband's] own admission in his deposition of August 6, 2004. The Court finds that [Husband] admitted encumbering and did further encumber the Duffy [Property] by securing $150,000 promissory note in favor of Mike's Remodeling, securing said promissory note with the Duffy [Property].

"(3) Count 3: The violation was established by [Husband's] own admission in his deposition of August 6, 2004. The Court finds that [Husband] transferred the Duffy [Property] to Grace Rzeslawski by signing the Grant Deed on May 27, 2004."

The statement of decision further found Wife did not give Husband her written consent to encumber or transfer the Duffy Property and that Husband's encumbrance and transfer of the Duffy Property without Wife's knowledge and consent was "blatantly bad faith" on Husband's part. Accordingly, the trial court stated: *"The court finds that [Wife] proved beyond a reasonable doubt that [Husband] is guilty* of **count 1** (that [Husband] violated the standard Family Law Restraining Orders by encumbering the [Duffy Property] by giving to [Bank] a note and deed of trust in the sum of $100,000 secured by [the Duffy Property] on or about February 4, 2004[]), **count 2** (that [Husband] violated the standard Family Law Restraining Orders by encumbering the Duffy [Property] by granting to Mike's Remodeling a Deed of Trust and Assignment of Rent secured by [the Duffy Property] on or about April 20, 2004[)], and **count 3** (that [Husband] violated the Family Law Restraining Orders by selling the Duffy [Property] or transferring title of the Duffy [Property] to Grace Rzeslawski on or about May 28, 2004), found in the Order to Show Cause and Affidavit for Contempt filed on April 26, 2005, *and as such finds [Husband] guilty of contempt for said counts.*" (Italics added.)

On March 17, we dismissed Husband's appeal "on the ground the rulings identified in his notice of appeal are nonappealable under Code of Civil Procedure sections 1222 and 904.1, subdivision (a)(1) as orders made in a case of contempt."

On April 13, Husband filed the instant petition for writ of review.

On May 4, we issued a writ of review ordering the trial court to certify and return to us any materials contained in the record in this case relating to the contempt proceedings against Husband. We also stayed execution of Husband's contempt sentence pending further order.

## DISCUSSION

### I

### *Award of Attorney Fees*

Husband contends the trial court acted in excess of its jurisdiction by awarding Wife attorney fees pursuant to section 1218, subdivision (a). After Husband's contempt trial on the OSC, the trial court issued written findings and an order sentencing him to 360 hours in custody pursuant to section 1218, subdivision (c) and ordering him to pay Wife attorney fees and costs of $28,109 pursuant to section 1218, subdivision (a). Husband argues that because the court sentenced him pursuant to section 1218, subdivision (c), it could not award Wife attorney fees pursuant to section 1218, subdivision (a).

### A

Section 1218 provides:

"(a) Upon the answer and evidence taken, the court or judge shall determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he or she is guilty of the contempt, a fine may be imposed on him or her not exceeding one thousand dollars ($1,000), payable to the court, or he or she *may* be imprisoned not exceeding five days, or both. *In addition, a person who is subject to a court order as a party to the action, or any agent of this person, who is adjudged guilty of contempt for violating that court order may be ordered to pay to the party initiating the contempt proceeding the reasonable attorney's fees and costs incurred by this party in connection with the contempt proceeding.* [¶] . . . [¶]

"(c) In any court action in which a party is found in contempt of court for failure to comply with a court order pursuant to the Family Code, the court *shall* order the following:

"(1) Upon a first finding of contempt, the court *shall* order the contemner to perform community service of up to 120 hours, or to be imprisoned up to 120 hours, for each count of contempt." (Italics added.)

Prior to 1993, section 1218 was not divided into subdivisions and essentially consisted of only one general sentencing provision—the general provision now contained in the first sentence of section 1218, subdivision (a). (See Historical and Statutory Notes, 19 West's Ann. Code Civ. Proc. (2006 supp.) foll. § 1218, p. 126.) At that time, section 1218 did not contain either a special sentencing provision regarding contempt findings for violations of

Family Code orders *or* an attorney fees and costs provision. Therefore, before 1993 a trial court had the *discretion* to punish any contempt (whether of a Family Code order or other order) by imposing up to a $1,000 fine or sentencing the contemner to up to five days (i.e., 120 hours) in custody, or both. Because section 1218 used the term "may," the trial court's decision regarding punishment was within its discretion and a court could impose no fine or sentence at all.

In 1993, section 1218's existing provisions were divided into two subdivisions (subds. (a) & (b)) and a new subdivision (subd. (c)) was added regarding contempt findings for violations of Family Code orders. (See Historical and Statutory Notes, 19 West's Ann. Code Civ. Proc., *supra*, foll. § 1218, p. 126.) By adding subdivision (c) to section 1218, the Legislature intended to remove from a trial court's discretion the authority to not impose any punishment in cases of violations of Family Code orders. Because new section 1218, subdivision (c) used the term "shall," the trial court's decision regarding punishment in those cases was no longer entirely discretionary. Therefore, since 1993 a trial court has been *required* to impose punishment for a contempt finding for violation of a Family Code order (i.e., up to 120 hours of custody or community service for a first finding of contempt).[8]

In 1995, an attorney fees and costs provision was included in section 1218 by adding a second sentence to section 1218, subdivision (a). (See Historical and Statutory Notes, 19 West's Ann. Code Civ. Proc., *supra*, foll. § 1218, p. 126.) By adding that second sentence, the Legislature intended to authorize a trial court to, in its discretion, require a contemner to pay the complainant's reasonable attorney fees and costs incurred in connection with the contempt proceeding.

### B

Husband argues that subdivisions (a) and (c) of section 1218 are mutually exclusive sentencing provisions and the trial court could sentence him only pursuant to section 1218, subdivision (c) for his violations of the Family Code restraining orders. Husband argues that because only section 1218, subdivision (c) applied to those violations, the trial court did not have the authority to award Wife attorney fees and costs pursuant to section 1218, subdivision (a).

---

[8] We nevertheless note that section 1218, subdivision (c) grants considerable discretion to a trial court by using the phrase "up to 120 hours." Under that language, a trial court could arguably impose anywhere from a minimum of one hour to a maximum of 120 hours of custody or community service.

However, the language of section 1218 must be read as a whole and each of its provisions must be construed in the context of its other provisions. (*Goodstein v. Superior Court* (1996) 42 Cal.App.4th 1635, 1641 [50 Cal.Rptr.2d 459]; *Travelers Indemnity Co. v. Gillespie* (1990) 50 Cal.3d 82, 99–100 [266 Cal.Rptr. 117, 785 P.2d 500]; *Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].) Furthermore, we consider the legislative intent and history of section 1218 to effectuate its purpose. (*Goodstein*, at p. 1641; *In re Clarissa H.* (2003) 105 Cal.App.4th 120, 125 [129 Cal.Rptr.2d 223].) "[W]e should seek to avoid absurd or anomalous results. [Citation.]" (*Goodstein*, at p. 1641.) ■ Independently applying those rules of statutory interpretation, we conclude the general punishment provision set forth in the first sentence of section 1218, subdivision (a) is supplanted by the more specific punishment provision set forth in section 1218, subdivision (c) in those cases involving contempt findings based on violations of Family Code orders. As to all other cases, the general punishment provisions of section 1218, subdivision (a) apply. As noted *ante*, by adding section 1218, subdivision (c) in 1993, the Legislature intended to remove, in cases of violations of Family Code orders, a trial court's discretion to not impose any punishment and instead *require* a court to impose *some* punishment.

■ Furthermore, by adding the second sentence to section 1218, subdivision (a), the Legislature intended to authorize a trial court to, in its discretion, require a contemner to pay the complainant's reasonable attorney fees and costs incurred in connection with the contempt proceeding. There is nothing in the plain language of that sentence that restricts its provisions to contempt proceedings other than those involving violations of Family Code orders. Also, reading section 1218 as a whole, there is no logical reason to conclude the attorney fees and costs provision of section 1218, subdivision (a) applies to all contempt proceedings, *except for* those contempt proceedings involving violations of Family Code orders. Rather, because many, if not most, contempt proceedings are initiated by private individuals and not judges or prosecutors, the apparent legislative intent of that provision was to authorize a trial court to award a complainant his or her attorney fees and costs incurred in a contempt proceeding. Because of the substantial cost of initiating and prosecuting a contempt proceeding, a private party would be economically discouraged from prosecuting a contempt proceeding were there no possibility of recovering attorney fees and costs. Therefore, to encourage parties to prosecute contempt proceedings (and indirectly encourage all parties to abide by the terms of court orders generally), we conclude the Legislature intended the second sentence of section 1218, subdivision (a) to authorize a trial court to award a complainant reasonable attorney fees and costs against a contemner *in all cases*, including violations of Family Code orders.

There is no logical reason to interpret section 1218, subdivision (a) to exclude awards of attorney fees and costs against contemners in cases of violations of Family Code orders. In fact, by reason of the Legislature's apparent intent to punish Family Code order contemners more severely than those that violate other orders (as reflected by section 1218, subdivision (c)), it can reasonably be inferred the Legislature also intended the attorney fees and costs provision of section 1218, subdivision (a) to apply to contemners who violate Family Code orders. Were those contemners to be exempted from potentially paying the attorney fees and costs of his or her contempt complainant, the effect would be to treat violators of Family Code orders more favorably than violators of other court orders. We conclude that result was not the Legislature's intent in adding the second sentence to section 1218, subdivision (a). The omission of attorney fees and costs language from subdivision (c) of section 1218 does not show the Legislature intended to preclude complainants from obtaining awards of attorney fees and costs incurred in prosecuting contemners who violate Family Code orders. Although express repetition of that provision in section 1218, subdivision (c) may have clarified any ambiguity, the legislative intent that the attorney fees and costs provision of section 1218, subdivision (a) apply to *all* contempt proceedings is apparent on consideration of section 1218's language, read as a whole, and its legislative scheme and purpose.[9] We conclude the trial court properly ordered Husband to pay to Wife, pursuant to section 1218, subdivision (a), the amount of $28,109 for reasonable attorney fees and costs she incurred in initiating and prosecuting the contempt proceeding against him.[10]

---

[9] We also reject Husband's assertion that because the trial court could not impose a fine on him pursuant to section 1218, subdivision (a), it could not order him to pay Wife her attorney fees and costs pursuant to that subdivision. Based on the plain language and legislative history of section 1218, the second sentence of section 1218, subdivision (a) is an independent provision. Prior to enactment of the second sentence in 1995, the first sentence of that subdivision had long provided for the punishment of contemners by either a fine or imprisonment, or both. In 1993 the Legislature added section 1218, subdivision (c), making punishment of violators of Family Code orders mandatory rather than discretionary (as with violators of other orders). Furthermore, an award of attorney fees and costs to a complainant pursuant to section 1218, subdivision (a) is *not* intended *to punish* the contemner, but is intended to reimburse that complainant for expenses incurred in prosecuting a contempt proceeding, thereby making the complainant whole. Finally, we do not necessarily agree with Husband's premise that a violator of a Family Code order cannot be fined pursuant to section 1218, subdivision (a). However, because it is unnecessary to our disposition of this petition, we need not, and do not, decide whether a violator of a Family Code order can be *fined* pursuant to section 1218, subdivision (a), in addition to the mandatory sentence of up to 120 days of custody or community service that must be imposed pursuant to section 1218, subdivision (c).

[10] Although Wife cites section 1218, subdivision (*d*), enacted in 2005, to support her interpretation of section 1218, subdivision (a), authorizing the trial court's award of attorney fees and costs to her, we need not, and do not, address the effect of that subdivision on section 1218, subdivision (a). Section 1218, subdivision (d) did not become effective until after the trial court's award in this case and, in any event, involves contempt proceedings for violations

II–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order of contempt is affirmed. The stay issued by this court on May 4, 2006, is vacated. Wife is entitled to costs in this writ proceeding.

Benke, Acting P. J., and McIntyre, J., concurred.

On November 22, 2006, the opinion was modified to read as printed above.

---

of domestic violence orders initiated by prosecutors or other public agents and not private parties, like Wife. In such cases, awards of attorney fees and costs are to be paid to an account of California's Office of Emergency Services for the purpose of funding domestic violence shelter providers. (§ 1218, subd. (d).)

*See footnote, *ante*, page 1.