[No. B234152. Second Dist., Div. Seven. July 30, 2012.]

REBECCA A. RICKLEY et al., Plaintiffs and Appellants, v.
MARVIN GOODFRIEND et al., Defendants and Respondents.

## COUNSEL

Natasha Roit, in pro. per., and for Plaintiffs and Appellants.

Jeffer Mangels Butler & Mitchell, Mark S. Adams, Kenneth A. Ehrlich and Elizabeth A. Culley for Defendants and Respondents.

## OPINION

**WOODS, J.**—Rebecca A. Rickley and Natasha Roit (collectively referred to as appellants) appeal from an order denying attorney fees to Roit, an attorney, for enforcing postjudgment contempt proceedings against respondents Marvin Goodfriend and Tina Fasbender Goodfriend. Although the court awarded attorney fees to Roit's cocounsel, it denied the request as to Roit, citing a lack of California authority to support an award of fees to a pro se attorney. Appellants contend the rule against awarding fees to a pro se plaintiff should not apply in contempt proceedings or that Roit should be able to recover fees for representing her spouse. We reverse and remand.

## FACTUAL & PROCEDURAL BACKGROUND

Appellants, who are married, own a home in Malibu over the Pacific Coast Highway. They filed a nuisance action in superior court against neighboring homeowners and respondents Marvin Goodfriend and Tina Fasbender Goodfriend (collectively respondents, individually referred to as Goodfriend and Fasbender). Respondents performed an illegal unpermitted remodel, after which they buried construction trash and debris on the hillside of their and

appellants' properties, in a landslide-sensitive area. In May 2004, Roit, on behalf of herself and Rickley, filed a case against respondents and Shahriar Yazdani to abate the nuisance and for violation of CC&R's (covenants, conditions and restrictions) (*Rickley v. Goodfriend* (Super. Ct. L.A. County, 2006, No. SC081696)). Judgment was entered in February 2006 by Judge Cesar Sarmiento to abate the nuisance (the First Judgment).

Appellants, again represented by Roit, filed another action against respondents for nuisance and violation of CC&R's based upon the encroachment of fences and foliage on appellants' property (case No. SC098072). Judgment was entered in that case in April 2010 by Judge Norman Tarle (the Second Judgment).

Respondents failed to comply with the terms of the Second Judgment, and appellants filed charging affidavits of contempt in August 2010. Roit enlisted the aid of another attorney, Christopher Campbell. Respondents did not take any responsive action or respond to appellants' request for informal resolution or comply with the court's order. The court issued a postjudgment order (as to the Second Judgment), directing respondents to make changes in the property and to file weekly progress reports. Respondents did not comply with that order and rejected all informal requests for compliance.

After a contempt trial which lasted over several days, the court issued its judgment and order of contempt on February 22, 2011. It found respondents guilty on three counts, fined them $3,000 each, and sentenced Goodfriend to three days in jail.

On March 21, 2011, appellants filed a motion for attorney fees pursuant to Code of Civil Procedure section 1218.[1] They requested $40,005 fees for Roit and $1,800 for Campbell. Campbell charged $375 per hour for 4.8 hours for a total of $1,800, and Roit charged $450 for 88.9 hours, for a total of $40,005.

In their opposition, respondents did not challenge the necessity or reasonableness of the hours or the hourly rates. Respondents questioned the apportionment of the fees requested because findings of guilt were made on only three of nine charges and because portions of the trial were allegedly not related to contempt matters.

---

[1] Code of Civil Procedure section 1218, subdivision (a) provides in pertinent part: "[A] person who is subject to a court order as a party to the action, or any agent of this person, who is adjudged guilty of contempt for violating that court order may be ordered to pay to the party initiating the contempt proceeding the reasonable attorney's fees and costs incurred by this party in connection with the contempt proceeding."

All subsequent undesignated statutory references shall be to the Code of Civil Procedure.

On May 3, 2011, the court issued its ruling, which included the following findings:

—"The object of this rule [(§ 1218)] is to 'encourage parties to prosecute contempt proceedings' (and 'indirectly encourage all parties to abide by the terms of court orders generally')."

—"Here, as was made clear by the evidence reviewed by the court prior to rendering its judgment for contempt on February 22, 2011, defendants essentially disregarded the court's judgment. The finding of contempt was well-deserved."

—"However, the fees provision of section 1218 exists specifically to reallocate costs required to prosecute a contemnor for contempt to the party at fault. . . . Indeed, based on the tenor of the proceedings in this action, the court finds it difficult to believe that plaintiffs would not have filed contempt proceedings under the circumstances presented, no matter the cost."

—"And in the end, plaintiffs should not have had to conduct an entire separate trial on the issue of contempt in order to secure defendants' compliance with the judgment in this action."

—"Under the circumstances, a fees award is appropriately imposed against the Goodfriends."

—"The court finds the hours and rate reasonable considering the circumstances, and Roit's experience."

The court explained it denied Roit's request for fees as there was "no binding authority" for an award of fees in a contempt proceedings to a pro se plaintiff, whether the plaintiff-attorney was the sole plaintiff or also sued with her partner. The court acknowledged that federal cases allowed for the recovery of fees where a pro se plaintiff also represented a coplaintiff, but denied fees due to the lack of California authority. This appeal followed.[2]

## DISCUSSION

Appellants contend that the general rule that a pro se attorney is not entitled to recover attorney fees should not apply to contempt proceedings and should not apply when an attorney represents a coplaintiff.

---

[2] Respondents also failed to comply with the terms of the First Judgment and appellants applied for an order to show cause regarding contempt as to Goodfriend only. Goodfriend entered a guilty plea on five violations and a contempt judgment was entered in November 2011. Appellants moved for attorney fees, and that motion was denied in December 2011. Appellants appealed in *Rickley v. Goodfriend* (B238965, app. pending). The opening brief in that case was filed on June 11, 2011, after oral argument in this case.

" ' " 'An order granting or denying an award of attorney fees is generally reviewed under an abuse of discretion standard of review; however, the "determination of whether the criteria for an award of attorney fees and costs have been met is a question of law." . . .' " ' . . . An issue of law concerning entitlement to attorney fees is reviewed de novo." (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378 [124 Cal.Rptr.3d 598], citations omitted.)

### 1. Supreme Court cases

As noted by the trial court, there is no binding California case authority on this specific issue. Our Supreme Court, however, has addressed the issue of awarding attorney fees to attorneys who act as pro se litigants in a variety of contexts.

In *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259], the Supreme Court held that "an attorney who chooses to litigate in propria persona and therefore does not pay or become liable to pay consideration in exchange for legal representation cannot recover 'reasonable attorney's fees' under [Civil Code] section 1717 as compensation for the time and effort he expends on his own behalf or for the professional business opportunities he forgoes as a result of his decision." (*Id.* at p. 292.) The court's reasoning was partially based on language in section 1717 which makes it applicable to attorney fees " 'which are incurred to enforce [a] contract.' " (11 Cal.4th at p. 279.) Relying on the dictionary definition of "incur" as to " 'become liable' " for, the court concluded that the language of section 1717 requires that a party must have actually paid attorney fees or has "become liable to pay consideration in exchange for legal representation." (11 Cal.4th at pp. 280–281.) *Trope*'s holding, however, was specifically limited to section 1717. (11 Cal.4th at pp. 290, 292.)

Several years after *Trope*, the Supreme Court again had occasion to consider the issue of an attorney fee award, in *Lolley v. Campbell* (2002) 28 Cal.4th 367 [121 Cal.Rptr.2d 571, 48 P.3d 1128]. *Lolley* did not interpret the term "incur" in the same way as *Trope*.

In *Lolley*, an employee unsuccessfully sought to recover unpaid overtime wages from his employer. He then filed an administrative claim before the state labor commission. He received an award, and the employer appealed. The Labor Commissioner determined that the employee could not afford

counsel and agreed to represent him in an appeal to the superior court. The employee prevailed again in superior court and was awarded back wages plus costs. The superior court denied his request for attorney fees as part of the cost award. The Court of Appeal affirmed, on the basis that Labor Code section 98.2 only requires an unsuccessful party in a superior court appeal to pay attorney fees "incurred by the other parties" and the employee was not obligated to pay fees to the Labor Commissioner. The Supreme Court determined that the term "incurred" was not synonymous with a personal obligation to pay the fees. It found that "California courts have routinely awarded fees to compensate for legal work performed on behalf of a party pursuant to an attorney-client relationship, although the party did not have a personal obligation to pay for such services out of his or her own assets. [Fn. omitted.]" (*Lolley v. Campbell, supra,* 28 Cal.4th at p. 373.) It relied upon *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 [95 Cal.Rptr.2d 198, 997 P.2d 511], which rejected the contention that one "incurs" attorney fees only when one has paid, or becomes liable to pay, fees from one's own assets. (*Lolley v. Campbell, supra,* 28 Cal.4th at p. 374, citing *PLCM, supra,* 22 Cal.4th at p. 1097.) *PLCM* focused on the fact that the fees were provided pursuant to an attorney-client relationship. (*Lolley v. Campbell, supra,* 28 Cal.4th at p. 375.) The *Lolley* court distinguished *Trope* because its holding was limited to its specific facts. As a result, the Labor Commissioner was entitled to recover fees for litigating the claim on behalf of the indigent employee. (*Id.* at p. 377.)

In *Musaelian v. Adams* (2009) 45 Cal.4th 512 [87 Cal.Rptr.3d 475, 198 P.3d 560], the Supreme Court held that attorney fees should not be awarded to an attorney litigating pro se as a sanction under section 128.7. That statute provides that sanctions for filing abuses "may consist of, or include, . . . reasonable attorney's fees and other expenses incurred as a direct result of the violation." (*Id.,* subd. (d).) The Supreme Court found that section 128.7's "primary purpose is to deter filing abuses, not to compensate those affected by them" and that the statute's language demonstrates an intent to reimburse for expenses, not to compensate for a party's time and effort. (45 Cal.4th at p. 519.) It also noted that the sanctions are limited to what is sufficient to deter repetition of the unwanted conduct. The court concluded that the purpose of the statute would not be defeated if attorney fees were not allowed to attorneys representing themselves. (*Ibid.*)

■ *Musaelian* pointed out that in other Supreme Court cases where awards of attorney fees were upheld (e.g., *Lolley, supra,* 28 Cal.4th 367;

*PLCM, supra*, 22 Cal.4th 1084), "attorney fees were 'incurred' in the sense that there was an attorney-client relationship, the attorney performed services on behalf of the client, and the attorney's right to fees grew out of the attorney-client relationship." (*Musaelian v. Adams, supra*, 45 Cal.4th at p. 520.) But it found those cases did not apply when a party is litigating his or her own case. (*Ibid.*)

## 2. Court of Appeal cases

We are also aware of many appellate cases which have addressed the issue of whether an attorney who is a party to litigation may be awarded attorney fees in a variety of situations, with a variety of results. (See, e.g., *Carpenter & Zuckerman, LLP v. Cohen, supra*, 195 Cal.App.4th 373 [anti-SLAPP statute; § 425.16]; *Argaman v. Ratan* (1999) 73 Cal.App.4th 1173 [86 Cal.Rptr.2d 917]; *Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608 [55 Cal.Rptr.2d 818] [§ 1021.5 private attorney general fees]; *Mix v. Tumanjan Development Corp.* (2002) 102 Cal.App.4th 1318 [126 Cal.Rptr.2d 267] [Civ. Code, § 1717 contractual attorney fees].)

In advance of oral argument we asked the parties to discuss *Healdsburg Citizens for Sustainable Solutions v. City of Healdsburg* (2012) 206 Cal.App.4th 988 [142 Cal.Rptr.3d 250], which was filed after the parties had submitted their briefs. In *Healdsburg*, a public interest group (HCSS) and two individuals filed a petition for writ of mandamus challenging the certification of an environmental impact report and project approvals for a resort development. One of the individuals, Grattan, was a member of HCSS and an attorney. Grattan agreed to work on the matter on a contingent fee basis with another attorney (who was not a member of HCSS and not named as a petitioner). (*Id.* at p. 992.) The superior court granted the writ petition in part. (*Id.* at p. 991.) HCSS then moved for attorney fees pursuant to the private attorney general statute, section 1021.5. The court determined that HCSS was 60 percent successful and awarded the nonmember attorney fees using a multiplier for contingent fees. Grattan was awarded fees but without application of the multiplier. (206 Cal.App.4th at p. 991.) The *Healdsburg* court noted that the fees did not arise out of a contractual agreement but were incurred to enforce an important right affecting the public, and conferred benefits on a large group. (*Id.* at p. 997.) The court then turned to the relationship that Grattan had with HCSS. HCSS had over 100 members. Grattan was experienced in environmental litigation and had worked at the same law firm with the nonmember attorney. The Court of Appeal concluded that the trial court did not err in awarding fees for her work because she had implicitly been "hired" as an attorney, there was no concern that she was self-dealing, she was seeking to vindicate an important public interest and she was taking a risk that she would not be compensated. (*Id.* at pp. 997–998.) It

found that the trial court reasonably could conclude that Grattan had an attorney-client relationship with HCSS and the other individual petitioner. (*Id.* at pp. 995–997.)

The *Healdsburg* court considered two other appellate court cases which addressed awards of attorney fees to attorneys who were also litigants, *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44 [100 Cal.Rptr.3d 152] and *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510 [37 Cal.Rptr.3d 381].

In *Gorman*, a homeowner, who was also an attorney in an incorporated law firm, represented himself and his wife in a lawsuit brought against a general contractor who had performed construction work on their residence. The construction contract provided for the recovery of attorney fees to the prevailing party in any litigation. (*Gorman v. Tassajara Development Corp., supra*, 178 Cal.App.4th at p. 52.) The homeowner-attorney and his wife signed retainer agreements with his law firm and another law firm. The parties settled the lawsuit, and the settlement agreement included a clause deeming the homeowners to be the prevailing parties for the purpose of recovering attorney fees pursuant to the terms of the construction contract. (*Id.* at p. 90.) The husband and wife requested attorney fees in excess of $1 million. The contractor objected to the recovery of any fees by the homeowner-attorney's law firm whether billed by the husband or his associate and paralegals. The trial court awarded only a portion of the fees requested and the homeowners appealed. On appeal, the court discussed *Trope* and its progeny. It concluded that there was no attorney-client relationship between the homeowner-attorney and his wife. It stated, "There is no indication that [the wife] suffered any damages apart from those suffered by her husband. Their interests in this matter appear to be joint and indivisible. There is no claim that Gorman spent extra time in this case representing his wife in addition to the time he spent representing himself. There is no claim that each of them owes half his fees. Their community estate is liable for their contracts. [Citation.] Since [the husband's] billable hours appear to be entirely attributable to representing his common interests with [his wife], we conclude that the rule of *Trope* applies to this situation." (*Id.* at p. 95.)

In *Ramona*, a school district filed a lawsuit against a neighborhood alliance and its attorneys. The gravamen of its complaint was that the defendants initiated and pursued meritless litigation for malicious purposes. (*Ramona Unified School Dist. v. Tsiknas, supra*, 135 Cal.App.4th at p. 522.) The alliance and its attorneys filed a motion to strike a complaint under the anti-SLAPP statute (§ 425.16). The statute provided that if a defendant prevailed on such a motion to strike, it was entitled to recover attorney fees. The defendants included the alliance, two nonattorney individuals, and an

attorney. Together they retained special counsel to represent them, but the attorney-defendant continued to aid in the legal defense of the others and herself. The court awarded fees to both the retained counsel and the attorney-defendant. On appeal, the court held that *Trope* did not bar the award, and that the availability of the awards turned on the existence of an attorney-client relationship. (135 Cal.App.4th at p. 524.) The court stated, "*Trope* does not preclude the award of attorney fees merely because [the attorney] was a codefendant with the nonattorney clients to whom she provided legal assistance." (*Id.* at p. 525.) An attorney-client relationship was found to exist because the attorney-defendant assisted in the legal defense of herself and the organization, rendering legal services. (*Id.* at p. 524.)

The decisions in *Healdsburg*, *Ramona*, and *Musaelian* were based on an examination of the purpose of the statute authorizing attorney fees. The purpose of the statute involved here, section 1218, is to encourage parties to enforce contempt violations and to encourage parties to comply with court orders.

Contempt proceedings under section 1218 are quasi-criminal in nature. (*People v. Gonzalez* (1996) 12 Cal.4th 804, 816 [50 Cal.Rptr.2d 74, 910 P.2d 1366].) In order to encourage parties to prosecute contempt proceedings and to indirectly encourage all parties to abide by the terms of court orders, section 1218 authorizes trial courts to award complainants attorney fees and costs for initiating and prosecuting contempt proceedings. (*Goold v. Superior Court* (2006) 145 Cal.App.4th 1, 10 [51 Cal.Rptr.3d 455].)

Here, it is clear that appellants initiated the nuisance proceeding to protect their property and economic interests. However, when respondents simply disregarded the judgment entered against them, appellants initiated an injunctive relief proceeding. Although they initiated the proceeding, the court ordered the contempt citation. This is a quasi-criminal proceeding, and at this point, appellants were assisting the court and public interest by seeking to enforce a court order.

Roit can be said to be vindicating an important public interest by ensuring respondents' compliance with the contempt order, and was taking a risk that she would not be compensated for her time. What has not been determined is under what conditions she agreed to represent Rickley and if there were other neighbors similarly situated who would benefit from the contempt ruling.

3. *Attorney-client relationship*

As in *Lolley*, *Musaelian*, and *Healdsburg*, we find that the dispositive factor in awarding fees is not whether Rickley and Roit were liable for or

obligated to pay fees, but whether there was an attorney-client relationship between Roit as an attorney and Roit and her spouse Rickley as homeowners. In this case, the trial court did not consider the existence of this relationship.

■ "No formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client. It is the fact of the relationship which is important." (*Farnham v. State Bar* (1976) 17 Cal.3d 605, 612 [131 Cal.Rptr. 661, 552 P.2d 445].)

In the context of the attorney-client privilege, the Evidence Code defines a client as "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity. . . ." (Evid. Code, § 951.) In *People v. Gionis* (1995) 9 Cal.4th 1196 [40 Cal.Rptr.2d 456, 892 P.2d 1199], the Supreme Court discussed the attorney-client relationship in light of the defendant's assertion of the attorney-client privilege. The court concluded that the defendant sought to speak with the attorney in his capacity as a friend, not an attorney. The attorney made it clear he was unwilling to act as a lawyer and did not want to be involved. Even though legal topics were discussed, the defendant was not consulting with the attorney for advice in his professional capacity. (*Id.* at pp. 1208–1209.) The trial court determined that no attorney-client relationship existed, and the Supreme Court upheld this determination. (*Id.* at pp. 1212–1213.)

■ Despite the language in *Gorman*, we do not feel that identical damages, nor joint and indivisible interests between the spouse-attorney and the other spouse defeat the attorney-client relationship. Instead, we must determine whether Rickley consulted Roit in her professional capacity and whether their relationship in terms of this lawsuit, was for the purposes of obtaining legal advice. As the record indicates, the trial court did not make a determination about whether an attorney-client relationship existed. The matter therefore must be remanded before the issue of entitlement to fees can be adjudicated.

## DISPOSITION

The judgment (order denying motion for fees) is reversed and the matter is remanded to the trial court for a determination of whether there was an

attorney-client relationship between Rickley and Roit. If such a relationship existed, then Roit's request for fees should be granted.

Appellants shall recover their costs on appeal.

Perluss, P. J., and Zelon, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 17, 2012, S205296.