Filed 7/22/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL GOGAL et al., <br><br> Plaintiffs, Cross-defendants and Appellants, <br><br> v. <br><br> XINHUI DENG et al., <br><br> Defendants, Cross-complainants and Respondents. | D084405 <br><br><br> (Super. Ct. No. 37-2022-00017670-CU-NP-NC) |

APPEAL from an order of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Affirmed.

Gogal Law Office and Michael Gogal, for Plaintiffs, Cross-defendants and Appellants.

Xinhui Deng, in pro. per. and Jianhua Wu, in pro per., for Defendants, Cross-complainants and Respondents.

The Supreme Court has held that lawyers appearing in propria persona to litigate their *own* claims cannot recover prevailing party contract-based attorney's fees under Civil Code section 1717.[1] (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 (*Trope*).) The related issue presented by this appeal has been the subject of inconsistent opinions from California appellate courts. Where a litigant purports to retain their attorney-spouse to represent them on a claim or defense they share with their spouse, under what circumstances, if any, can they recover their share of prevailing party attorney's fees for work on the case performed by the lawyer-spouse?

In *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44 (*Gorman*), a nonlawyer coplaintiff unsuccessfully sought to recover contract-based fees for services rendered by her husband-attorney in successfully litigating a construction defect claim involving a house they coowned. The *Gorman* panel assumed that a "true attorney-client relationship" did not exist because the spouses' interests were "joint and indivisible," meaning the nonattorney wife's involvement in the case did not impact either the damages recoverable or the work required of the husband-attorney. (*Id.* at p. 95.) A few years later, in *Rickley v. Goodfriend* (2012) 207 Cal.App.4th 1528 (*Rickley*), a nonlawyer spouse sought to recover prevailing party attorney's fees for legal services provided by her lawyer-spouse after they jointly and successfully prosecuted a postjudgment contempt proceeding. This time, the authority to award fees came from a statute rather than a contract, but the court did not rely on this distinction. Rejecting much of the analysis in *Gorman*, the *Rickley* court concluded that the existence of an attorney-client relationship in this context depended primarily on whether the nonattorney consulted her spouse "in her professional capacity" and "for the purposes of

---

[1] Subsequent undesignated statutory references are to the Civil Code.

2

obtaining legal advice." (*Rickley*, at p. 1538.) The matter was remanded back to the trial court for further findings on that issue. (*Ibid.*)

Plaintiffs Michael Gogal and Hildy Baumgartner-Gogal, a married couple (tenants),[2] prevailed on a retaliatory eviction claim brought under section 1942.5 against their former landlords, defendants Xinhui Deng and Jianhua Wu (landlords). For most of their lawsuit, tenants were represented by Michael, a licensed attorney. Postjudgment, tenants moved under section 1942.5 to recover half of Michael's fees billed in the case, which they attributed to representing Hildy. Notwithstanding that the tenants provided declarations indicating that Hildy believed she had retained Michael in his capacity as an attorney, the trial court applied *Gorman* to deny this request because tenants' interests were "joint and indivisible," as neither the damages tenants sought nor the work Michael performed were impacted by Hildy's presence in the suit. (See *Gorman, supra*, 178 Cal.App.4th at p. 95.)

It might be simple to follow *Gorman* and merely assume fees are not awardable because Michael represented Hildy in a litigation involving a joint claim. But in our judgment, a more nuanced analysis is required. Indeed, as even *Gorman* recognized, the critical question is whether "a true attorney-client relationship exists between spouses." (*Gorman, supra*, 178 Cal.App.4th at p. 95.) We agree with *Rickley* that courts must examine the record to determine whether such a relationship exists between spouses. They cannot merely assume as a matter of law, irrespective of the evidence, that it does not. Here, the trial court's reliance on seemingly applicable language in *Gorman* seems to have distracted it from making the crucial inquiry as to the existence of an attorney-client relationship between Hildy and Michael.

---

[2] Our subsequent use of tenants' first names is for clarity and not intended as any sign of disrespect.

3

We nonetheless affirm because our review of the record reveals that tenants failed to present facts sufficient to establish the existence of a true attorney-client relationship.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2017, tenants and landlords executed a residential lease for a home in Carlsbad, California. After three extensions, the lease expired on June 30, 2022. Four months earlier, tenants approached landlords about extending the lease until June 30, 2023. A dispute quickly arose, as tenants accused landlords of insisting on an unlawful rent increase in exchange for the extension. This dispute, which escalated over the next few months to include the tenants' allegations of other unlawful conduct by landlords, culminated in May 2022 with tenants' filing of a civil complaint alleging a claim of retaliatory eviction under section 1942.5.[3]

In December 2023, the court conducted a bench trial on tenants' claims and on landlords' cross-claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The court ruled in tenants' favor on their retaliatory eviction claim, awarding them $4,226.35 in compensatory damages and $2,000 in punitive damages. It also ruled in tenants' favor on most of their other claims and on landlords' cross-claims, which resulted in a total judgment of $23,890.38 against landlords.

---

[3] Tenants also brought claims for (1) breach of written contract, (2) harassment, (3) breach of covenant of good faith and fair dealing, (4) breach of covenant of quiet enjoyment of the premises, (5) intentional infliction of emotional distress, (6) negligent infliction of emotional distress, (7) negligence, (8) constructive eviction, and (9) declaratory relief. In an amended complaint, tenants added a claim of violations of security deposit law and bad faith. Tenants' claim for attorney's fees is based on judgment in their favor on their retaliatory eviction claim; thus, we will not discuss these other claims.

Shortly after judgment was entered, tenants filed a motion under section 1942.5 to recover roughly $152,000 in attorney's fees. Subdivision (i) of the statute provides, "In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action." The retaliatory eviction claim as alleged in tenants' original complaint included a request for attorney's fees under this statute.

Tenants' fee motion sought to recover for work performed by two attorneys. A small portion of the requested fees consisted of $1,780 billed by Darwin Bustarde, who rendered services throughout the case but did not make an appearance. The lion's share of tenants' fee request was for work allegedly performed by Michael on behalf of Hildy.

Tenants filed their complaint as self-represented plaintiffs, but Michael became their attorney of record in August 2022. Licensed to practice in California, Michael was a solo practitioner and apparent owner of the Gogal Law Office, PC. According to Michael's declaration filed in support of the fee motion, in August 2022 Hildy "signed a written retainer agreement with the Gogal Law Office, PC confirming her attorney-client relationship with Michael Gogal . . . in this litigation. [Michael] represented [Hildy] in this litigation from that point to the present." Hildy similarly declared, "On August 8, 2022, I signed a written retainer agreement with the Gogal Law Office, PC confirming my attorney-client relationship with Michael Gogal, Esq. in this litigation. Michael Gogal has since represented me throughout the remainder of this litigation, including the trial of this matter, and he has discussed this matter with me to great extent and to my full satisfaction." Neither declaration contained any other allegations concerning the nature of Michael's purported representation of Hildy.

5

Citing a billing rate of $400 per hour, tenants' fee motion multiplied the hours Michael worked on the case (502.2 total hours) by half his billing rate ($200) to arrive at a figure ($100,440) they believed corresponded to Hildy's portion of Michael's fees for his work on the retaliatory eviction claim. They then urged the trial court to apply a fee enhancement, or "multiplier," under *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132, of one-and-a-half times to account for the difficulty of the case and Michael's lost business opportunities. This last step increased the requested amount of Michael's fees to $150,660.[4]

The trial court granted the tenants' motion as to Bustarde's fees but denied it as to Michael's. In rejecting tenants' request to recover the latter, the trial court relied primarily on *Gorman, supra*, 178 Cal.App.4th 44. "As in *Gorman*," the court found "no indication that [Hildy] suffered any damages apart from those suffered by [Michael]—indeed, their interests in this matter were joint and indivisible and flow from [landlords'] unlawful conduct concerning the lease." The court made no specific finding as to whether Hildy consulted Michael for legal advice in his professional capacity.

In holding that Michael's fees were not recoverable, the trial court also addressed *Rickley*, *supra*, 207 Cal.App.4th 1528, on which tenants placed substantial reliance. The court "respectfully disagree[d]" with tenants' reading of *Rickley* as stating that "a non-attorney spouse in a joint representation between the spouses may recover attorney's fees for their

_____

4      Although *Trope, supra*, 11 Cal.4th 274, dealt with contract-based fees, tenants conceded below that it also barred an award of statutory fees for Michael's portion of the claim, which is why they calculated the fees for Hildy's portion by halving the market rate. Tenants do not take a different position on appeal, so we assume without deciding that *Trope* applies to a motion for attorney's fees under section 1942.5.

spouse-attorney's legal services so long as there is an attorney-client relationship and the attorney's fees are authorized by statute." Rather than extract this "bright-line rule," the court read this portion of the opinion as merely stating that "on the then-existing record . . . the trial court failed to consider the conditions on which the [attorney-spouse] agreed to represent her [nonattorney] spouse."

## DISCUSSION

### A. *Legal Framework*

"California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees." (*Trope, supra*, 11 Cal.4th at p. 278.) Code of Civil Procedure section 1021 codifies this general rule but also allows for statutory exceptions. (See also *Trope*, at pp. 278–279 [discussing statute].) Subdivision (i) of section 1942.5—invoked by tenants in an attempt to recover Michael's attorney fees—is one such exception. As noted, this subdivision provides that attorney's fees "shall" be awarded to a party who prevails on a retaliatory eviction claim so long as a party requested a fee award when the case was initiated. (*Ibid.*)

" ' " 'On review of an award [or denial] of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " ' " (*Sandlin v. McLaughlin* (2020) 50 Cal.App.5th 805, 828–829; accord, *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 ["it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a

7

question of law to be reviewed de novo"].)  Accordingly, we review for legal error whether an attorney-client relationship existed as required for Hildy to recover Michael's fees rendered on her behalf.  (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 520 [attorney's fees are awardable when "there was an attorney-client relationship, the attorney performed services on behalf of the client, and the attorney's right to fees grew out of the attorney-client relationship"].)  "The question of whether an attorney-client relationship exists is one of law.  [Citations.]  However, when the evidence is conflicting, the factual basis for the determination must be determined before the legal question is addressed."  (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1733.)

"In determining the existence of an attorney-client relationship we should ask whether the 'totality of the circumstances' so indicate."  (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 732.)  The focus of the inquiry is whether a party "receiv[ed] professional services from a lawyer." (*PCLM Group v. Drexler* (2000) 22 Cal.4th 1084, 1092.)  The formation of this relationship necessarily requires the consultation of an attorney in his or her "professional capacity."  (*People v. Gionis* (1995) 9 Cal.4th 1196, 1207 (*Gionis*) accord, *Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2000) 79 Cal.App.4th 114, 126 [" ' "When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established prima facie" ' "]; Evid. Code § 951 [" 'client' means a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity"].)  That does not mean, however, that the mere discussion of legal topics with an attorney is

enough to establish an attorney-client relationship; legal advice must be sought. (*Gionis*, at p. 1212.)

The presence or absence of other factors may shed light on whether a bona fide attorney-client relationship was formed. We should consider whether the attorney is obligated to pay the attorney his or her fees, although the absence of such an obligation does not preclude a finding that an attorney-client relationship exists. (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 373.) Whether the record supports a concern of "self-dealing" by the attorney is also a relevant consideration. (*Healdsburg Citizens for Sustainable Solutions v. City of Healdsburg* (2012) 206 Cal.App.4th 988, 997–998.) In a case where a spouse-attorney represents his or her nonattorney spouse, and the spouses are both parties to the lawsuit, we should consider evidence bearing on whether the claim is a joint claim and whether the attorney-spouse has an indivisible pecuniary interest in the outcome of the litigation. (*Gorman*, *supra*, 178 Cal.App.4th at p. 95.)

## B. *The record does not establish that Hildy and Michael had an attorney-client relationship.*

Tenants prevailed on their retaliatory eviction claim and requested statutorily mandated attorney fees when they initiated their case, which means that whether Hildy can recover any of Michael's fees turns on whether he and Hildy had formed an attorney-client relationship. Hildy claims that her execution of a retainer agreement with Michael's firm established that she "consulted [Michael] in his professional capacity as an attorney to obtain his legal advice." Landlords counter that there is no evidence that Hildy "sought advice from [Michael] because [Michael] initiated and directly controlled the litigation activities by himself" or that Michael "advised [Hildy] in a manner that differed from his own interests as a plaintiff."

9

Accordingly, landlords claim, there was no "true and authentic attorney-client relationship."[5]

As we have noted, the trial court's analysis was framed by the largely inconsistent decisions in *Gorman* and *Rickley*. These appellate opinions took decidedly different approaches to resolving whether the nonlawyer spouses in those cases formed an attorney-client relationship with their lawyer-spouses.[6]

In *Gorman*, a husband-attorney (Gorman) and his nonattorney wife (Cheng) favorably settled a construction defect claim brought under a contract that entitled the prevailing party to attorney's fees. (*Gorman*, *supra*, 178 Cal.App.4th at pp. 52–53.) The couple sought those fees under section 1717, which mandates an award to a party prevailing in an action on a

---

[5] Landlords argue for the first time on appeal that (1) section 1717, not section 1942.5, is controlling as to whether attorney's fees are recoverable, and (2) a $1,000 cap on fees and costs contained in the lease limits any award of fees. These arguments are forfeited. (*American Continental Inc. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281; see also *County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1444 [" 'the in propria persona litigant is held to the same restrictive rules of procedure as an attorney' "].) In any case, sections 1717 and 1942.5 are alternative bases for an award of attorney's fee following litigation of a retaliatory eviction claim where the parties had signed a lease, meaning tenants could proceed under either statute. And the lease's cap on attorney's fees is unenforceable because subdivision (f) of section 1942.5 states that "[a]ny waiver by a lessee of the lessee's rights under this section"—which include a mandatory award of reasonable attorney's fees under subdivision (i)—shall be "void as contrary to public policy."

[6] Attorney-client relationships have been recognized between an attorney-spouse and a nonattorney spouse when the former represented the latter in litigation that did not involve a joint claim. (See, e.g., *Lopez v. Lopez* (2022) 81 Cal.App.5th 412; *Rickley v. County of Los Angeles* (9th Cir. 2011) 654 F.3d 950.)

contract that has a fee-shifting provision.  (*Gorman*, at pp. 91–92.)  Gorman and Cheng were represented throughout the litigation by two firms with which Cheng executed retainer agreements.  (*Id.* at p. 95.)  One of the law firms was Gorman & Miller, PC (the Gorman firm), which used Gorman and other members to litigate the couple's claim.  (*Ibid.*)

The trial court awarded Gorman and Cheng only a portion of the fees they requested.  (*Gorman, supra,* 178 Cal.App.4th at p. 53.)  But because it was not clear how the court determined the award amount, the Sixth Appellate District reversed and remanded for further proceedings.  (*Ibid.*)  In doing so, the court confirmed that fees billed by the second law firm and members of the Gorman firm other than Gorman could be recovered.  (*Id.* at pp. 93–97.)

As to the fees for the work that Gorman personally performed, the court explained:  "We can certainly imagine cases in which a true attorney-client relationship exists between spouses.  However, in this case, husband and wife sued for and obtained recovery for the defective construction of their residence.  There is no indication that Cheng suffered any damages apart from those suffered by her husband.  Their interests in this matter appear to be joint and indivisible.  There is no claim that Gorman spent extra time in this case representing his wife in addition to the time he spent representing himself.  There is no claim that each of them owes half his fees.  Their community estate is liable for their contracts.  [Citation.]  Since Gorman's billable hours appear to be entirely attributable to representing his common interests with Cheng, we conclude that the rule of *Trope* applies to this situation."  (*Gorman, supra,* 178 Cal.4th at p. 95.)

*Gorman* does not mention the principle that an attorney must be consulted in his or her professional capacity for legal advice in order for an

11

attorney-client relationship to exist. Nor does the opinion attempt to define the difference between a "true" attorney-client relationship and any other kind. It is thus unclear whether *Gorman* purported to establish an inflexible legal rule that there can never be an attorney-client relationship between spouses where their interests in the litigation and the damages they suffered were "joint and indivisible." (*Gorman, supra,* 178 Cal.App.4th at p. 95.) In the alternative, perhaps the opinion is merely holding that such circumstances will not support a finding of a "true" attorney-client relationship in the absence of other evidence indicating that the nonattorney spouse is playing more than a nominal role.

In contrast to *Gorman,* the court's opinion in *Rickley, supra,* 207 Cal.App.4th 1528, focused on more traditional criteria for determining whether an attorney-client relationship was created. In *Rickley,* an attorney (Roit) represented herself and her nonattorney spouse (Rickley) in an action to hold their neighbors in contempt for failing to comply with a judgment on a nuisance claim on which they had prevailed. (*Id.* at pp. 1530–1531.) Rickley and Roit were also assisted by a second attorney. (*Ibid.*) After the trial court found the neighbors guilty of contempt, Rickley and Roit moved for an award of attorney's fees under Code of Civil Procedure section 1218, which in subdivision (a) gives a court discretion to award them if the party who initiates contempt proceedings prevails. (*Rickley*, at p. 1531.) The court granted the request for the other attorney's fees but denied it for Roit's. (*Id.* at p. 1532.) The trial court believed there was " 'no binding authority' for an award of fees in a contempt proceedings [*sic*] to a pro se plaintiff, whether the plaintiff-attorney was the sole plaintiff or also sued with her partner." (*Ibid.*)

After the couple appealed, the Second Appellate District explained "that the dispositive factor in awarding fees is . . . whether there was an

12

attorney-client relationship between Roit as an attorney and Roit and her spouse Rickley as homeowners. In this case, the trial court did not consider the existence of this relationship." (*Rickley*, *supra*, 207 Cal.App.4th at pp. 1537–1538.) Departing from *Gorman*, the *Rickley* court stated that neither "identical damages, nor joint and indivisible interests between the spouse-attorney and the other spouse" necessarily defeat an attorney-client relationship. (*Rickley*, at p. 1538.) "Instead," it concluded, "we must determine whether Rickley consulted Roit in her professional capacity and whether their relationship in terms of this lawsuit, was for the purposes of obtaining legal advice."[7] (*Rickley,* at p. 1538.) Because the trial court never made any determination about whether an attorney-client relationship existed, the appellate court remanded the matter to decide that issue "before the issue of entitlement to fees can be adjudicated." (*Ibid.*)

Broadly speaking, we think *Rickley*'s fact-based analysis frames the correct approach. While joint interests and coincident damages are relevant and often determinative considerations, they do not necessarily preclude an attorney-client relationship any more than separate interests and distinct damages define it. *Gorman* can be harmonized with *Rickley* if it is construed narrowly to say that in the absence of other evidence, spouses with totally joint interests and seeking only coincident damages will generally be unable to establish a true attorney-client relationship. Although we do not decide what other evidence would suffice, it may include any facts tending to show

_____

[7] It is unclear whether these spouses executed a retainer agreement. This potential distinction between *Rickley* and *Gorman* is irrelevant to our analysis because, as *Rickley* observed, " 'No formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client. It is the fact of the relationship which is important.' " (*Rickley, supra*, 207 Cal.App.4th at p. 1538, quoting *Farnham v. State Bar* (1976) 17 Cal.3d 605, 612.)

that the nonattorney spouse played a significant substantive role in the litigation rather than merely deferring to the other spouse.

Here, the trial court appears to have read *Gorman* more as a legal rule rather than a conclusion to be drawn from the state of factual record. Even so, the court would have reached the same result had it looked beyond the inflexible legal principle that *Gorman* can be read to suggest. Hildy's declaration merely recites that she signed a retainer agreement with Michael's law office, which tenants believe "confirm[ed] [their] attorney-client relationship." The retainer agreement, however, is not in the record. And although Hildy adds that Michael had "discussed the matter with me to great extent and to my full satisfaction," the mere discussion of legal topics is not enough to establish an attorney-client relationship. (*Gionis*, *supra*, 9 Cal.4th at p. 1210.)

The key evidence that is missing in this case concerns Hildy's role in the litigation, the circumstances of her consultations with Michael, and their purpose. Attorney argument that those consultations were indicative of an attorney-client relationship, of course, is not evidence. (*J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 343.) And Hildy's hindsight belief that an attorney-client relationship existed is not relevant to our inquiry. (*Zenith Ins. Co. v. O'Connor* (2007) 148 Cal.App.4th 998, 1010 ["hindsight 'beliefs' that a[n attorney-client] relationship existed are thus legally irrelevant"].) Simply put, tenants did not introduce evidence sufficient to overcome the natural inferences that arise from an attorney-spouse pursuing an entirely joint claim with entirely coincident damages,

14

evidence that is necessary to demonstrate a bona fide attorney-client relationship in this context.[8]

## DISPOSITION

The order denying the motion for attorney's fees is affirmed. Landlords shall recover their costs on appeal.

DATO, J.

WE CONCUR:

IRION, Acting P. J.

BUCHANAN, J.

---

[8] We do not address tenants' argument that a reversal is required because they vindicated an important public interest. The *Rickley* court considered the plaintiffs' vindication of the public interest in enforcing judgments as a factor favoring an award of Roit's fees under a *discretionary* statutory scheme. (*Rickley, supra,* 207 Cal.App.4th at pp. 1537–1538; Code of Civ. Proc., § 1218 [party guilty of contempt "may be ordered to pay . . . reasonable attorney's fees"].) An award of attorney's fees to the party prevailing on a retaliatory eviction claim under section 1942.5, by contrast, is *mandatory* so long as a party sought fees at the beginning of the case. (§ 1942.5, subd. (i).) Accordingly, the significance of the public interest tenants believe their suit vindicated is not pertinent to whether an attorney-client relationship existed.